Chief Justice Hecht delivered the opinion of the Court.
At common law, a decedent's close surviving family members had a quasi-property right in the decedent's remains, supporting the recovery of mental anguish damages for mishandling the corpse.[1] Over *541 time, we have reviewed our jurisprudence regarding mental anguish damages and limited their recovery. The question here is whether those limitations now require a contractual relationship between the plaintiff and defendant before mental anguish damages can be recovered for mishandling a corpse. We answer no, affirm the judgment of the court of appeals,[2] and remand the case to the trial court.
I
Sharlene Lobban, 52, died unexpectedly of a heart attack at 8:22 a.m. on a Thursday in Brownwood, Texas, where she lived with her 14-year-old son. She was not married at the time, and her siblings were notified-two sisters and a brother, all living in Lubbock, a little over three hours away by car. The two sisters drove to Brownwood the same day to meet with a funeral home owned by petitioner SCI Texas Funeral Services, Inc. The sisters told SCI that Lobban also had an adult son, respondent Cody Nelson, who they thought was living in Tucson, but none of the family members had current contact information for him. The family, the hospital, and SCI all tried to find Nelson, beginning the day Lobban died, calling his last-known employer, friends, and even the Tucson police department. But they were unsuccessful.
Lobban's siblings and her minor son all agreed that she wanted her body to be cremated. Under Texas law, a cremation ordinarily cannot occur within 48 hours of death,[3] which meant that Lobban's remains could not be cremated before Saturday at the earliest. Because the only available crematories would be closed for the weekend, the cremation could not occur until Monday, when the siblings needed to be back at work in Lubbock. But the waiting period can be waived by a justice of the peace, and the siblings signed an authorization for SCI to arrange an expedited cremation. SCI obtained approval of a justice of the peace, and Lobban's remains were cremated on Friday. The siblings scattered Lobban's ashes in the cemetery where her parents were buried, as she had wanted. A memorial service was held at Lobban's church Sunday afternoon, and afterward the siblings returned home.
Section 711.002(a) of the Texas Health and Safety Code prescribes who has the right to control the disposition of a decedent's remains. As SCI knew, Nelson's right was superior to his mother's siblings'.[4] SCI contends that it accepted the siblings' cremation authorization based on *542 their assurance that Nelson would not object to proceeding in his absence. The siblings assert that SCI failed to explain to them that Nelson had the sole legal right by statute to make decisions regarding the disposition of Lobban's remains, and had they known, they would not have signed the authorization.
Nelson was in Tucson but concedes his family had no way of contacting him in the days immediately following his mother's death. He had lost his job a few days earlier, had no cell phone, and was staying with a friend unknown to his family. He first learned Lobban had passed away the following Wednesday. Using a local library's computer to log onto his Myspace account, a social networking website, he found a message from one of his aunts asking him to contact her. When he searched the Internet for his mother's name, he found that she had died. He called SCI four days later.
Nelson sued SCI for negligence in proceeding with the cremation of his mother's body without his authorization. He does not complain of any other aspect of the disposition of his mother's remains and admits that he would have done nothing differently than his family did. Nelson claims mental anguish damages for having been denied the opportunity to pay his last respects to his mother.[5]
Both parties moved for summary judgment, Nelson on liability only, and SCI on damages. The trial court granted Nelson's motion, concluding that SCI was negligent per se because it disposed of Lobban's remains without Nelson's approval in violation of his rights under Section 711.002(a). SCI's motion relied heavily on our decision in City of Tyler v. Likes , where we stated:
Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result.[6]
SCI argued that there was no evidence of malice on its part, or physical injury to Nelson, or shocking and disturbing injuries, and therefore Nelson could not recover mental anguish damages absent a special relationship with SCI. An example we gave in Likes was a contract for "preparing a corpse for burial".[7] Not having contracted with Nelson, SCI argued, it could not be liable to him for mental anguish damages. The trial court granted SCI's motion specifically on this ground[8] and rendered judgment for SCI.
The court of appeals concluded that SCI and Nelson had a special relationship without being in contractual privity.[9] The court declined to follow Lions Eye Bank of Texas v. Perry , decided by another court, which held that contractual privity is required.
*543 [10] As next of kin, the court here reasoned, Nelson had a common-law, quasi-property right to his mother's remains under this Court's decision in Evanston Insurance Co. v. Legacy of Life, Inc.[11] Nelson also had the superior right to control the disposition of his mother's remains under Section 711.002(a).[12] Either right, the court concluded, was "sufficient to create a special relationship between [Nelson] and SCI, giving rise to a duty on the part of SCI to avoid causing mental anguish to Nelson."[13] Thus, the court reversed and remanded for further proceedings.[14]
We granted SCI's petition for review, in part to resolve the conflict between the courts in this case and Lions Eye Bank .[15]
II
SCI argues that to recover mental anguish damages for mishandling a corpse, a claimant must be in contractual privity with the defendant. We begin by summarizing Texas law regarding the recovery of mental anguish damages, first more generally and then with respect to the mishandling of a corpse. We then turn to the application of that law in this case.
A
As we observed in Likes , "the law of mental anguish damages is rooted in societal judgments, some no longer current, about the gravity of certain wrongs and their likely effects."[16] "[T]his ad hoc pattern of development," we lamented, has led to "an almost unparalleled state of confusion" in the caselaw, such that "any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity."[17] We made no attempt in Likes to undertake "the perhaps impossible task of distilling a unified theory of mental anguish from the existing precedents",[18] and we do not do so here. But Likes did help make several things clearer.
To begin, there is no general duty to avoid negligently inflicting mental anguish upon others.[19] Mental anguish damages are recoverable when certain other legal duties are breached and the plaintiff offers a minimum quality of proof.[20] Historically, Texas law did not afford damages for mental anguish unless "(1) accompanied by a physical injury resulting from a physical impact, or (2) produced by a particularly upsetting or disturbing event."[21] Over time, courts expanded these exceptions,[22] and we eventually allowed recovery for negligent infliction of emotional *544 distress as its own tort.[23] We quickly abolished this new tort,[24] clarifying evidentiary requirements[25] and limiting mental anguish damages to certain categories of claims.[26]
Today, whether negligently inflicted mental anguish damages are recoverable depends both on "the nature of the duty breached" and on the sufficiency of the plaintiff's evidence.[27] In Likes , we said that mental anguish damages might be available where the plaintiff establishes "intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties ... [and in] a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result."[28] But even this list, we said, is not exhaustive.[29] As to the evidentiary standard, a plaintiff must generally provide "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine."[30]
This current state of the law has developed around two principal concerns with mental anguish damages. One is genuineness. The existence of mental anguish is "inherently difficult to verify."[31] We have addressed this concern through the strict evidentiary requirements of Parkway Co. v. Woodruff .[32] Verifiability is at issue in every mental anguish case, and the source of the anguish-here, negligent mishandling of a corpse-is irrelevant in considering whether a plaintiff has met his burden.[33]
The other concern is foreseeability. Mental anguish is substantially more difficult to foresee than other injuries because "[t]he invasion of the same legal right may lead to extreme anguish in one person *545 while causing essentially no emotional damage to another."[34] Because the circumstances of each individual and situation can differ to such extremes, "it is difficult for the law to distinguish between those instances when mental anguish is reasonably foreseeable from particular conduct and those when it is so remote that the law should impose no duty to prevent it."[35] Requiring a special relationship, malice, or a particularly shocking injury helps alleviate this concern, either by ensuring that the injury and injured party are foreseeable to the defendant (because of the existence of a special relationship) or by shifting the risk of overcompensation in only especially egregious situations.
B
As we observed in Evanston , "[h]istorically, the bodies of deceased persons ... have held a unique status in the law."[36] Though it has long been established under the common law that "a dead body is not the subject of property",[37] we have recognized that next of kin generally have a right to possess the body and control the burial,[38] a right we first called a quasi-property right more than 80 years ago.[39] As we explained in Evanston :
Historically, the notion of a quasi-property right arose to facilitate recovery for the negligent mishandling of a dead body. If the plaintiff could show that his property right had been harmed, he would avoid the burden of proving that his emotional distress was accompanied by physical injury .... In reality, however, the primary concern of the right is not the injury to the dead body itself, but whether the improper actions caused emotional or physical pain or suffering to surviving family members. The injury is seldom pecuniary; rather, damages are grounded in the mental and physical injuries of survivors.[40]
Thus, Evanston concluded, "[t]he common law ... allows next of kin to sue for mental anguish damages when acts are performed on a decedent's body or tissues without the next of kin's consent in certain circumstances."[41]
In St. Elizabeth Hospital v. Garrard , we approved a claim for mental anguish damages by parents against a hospital for negligently disposing of their stillborn infant's body in an unmarked, common grave without their knowledge or consent.[42] We did so by recognizing an independent tort of negligent infliction of emotional distress.[43] Justice Spears concurred in the judgment, *546 arguing that the recovery should have been upheld on the narrower basis that mental anguish damages are available to close family members for the mishandling of a corpse.[44] Not long afterward, we overruled Garrard 's recognition of an independent tort but noted that "the holding of Garrard was correct,"[45] suggesting that Justice Spears' view was right. We remain of the view that mental anguish damages are available for mishandling a corpse.
We assumed this to be true in Service Corp. International v. Guerra , as long as the evidentiary burden is met.[46] The question there was whether the evidence supported a jury finding that a decedent's surviving spouse and daughters suffered compensable mental anguish when the decedent's body was disinterred and moved to another grave without permission.[47] We upheld the finding as to the widow, who testified that she suffered stress, burning in her stomach, fear, and anxiety.[48] But we overturned the finding as to the daughters who provided only cursory testimony about the experience being "very difficult."[49] Our analysis focused on the type of direct evidence of mental anguish necessary to support an award, "even when an occurrence is of the type for which mental anguish damages are recoverable".[50]
In prior cases, too, we have allowed next of kin to recover mental anguish damages for negligent mishandling of a corpse. In Classen v. Benfer , we upheld the jury's damages assessment, which included mental anguish damages, where a corpse was moved from its resting place without the family's consent and subsequently misplaced.[51] And in Love v. Aetna Casualty & Surety Co. , the next of kin were allowed to pursue mental anguish damages after an autopsy was performed without consent of the next of kin.[52]
In sum, although we do not recognize an independent cause of action for negligent infliction of mental anguish, mental anguish damages may be available when they are "caused by defendant's breach of some other legal duty."[53] We hold, consistent with all our prior cases, that negligent mishandling of a corpse is one such legal duty where mental anguish damages may be available.
C
SCI argues that mental anguish damages are available for mishandling a corpse only when there is a special relationship between the parties-specifically, contractual privity. SCI points to Lions Eye Bank of Texas v. Perry .[54] There, a jury awarded *547 mental anguish damages to the decedent's parents based on its finding that the eye bank negligently removed the decedent's eyes against the parent's wishes.[55] On appeal, the eye bank argued that the parents could not recover for the negligent infliction of mental anguish, and the court of appeals agreed.[56] The court held that in order to recover for mental anguish, a plaintiff must establish a special relationship requiring three elements: 1) a contract between the parties, 2) the plaintiff's particular susceptibility to emotional distress, and 3) the defendant's knowledge of that susceptibility.[57]
But whether a "special relationship" exists is not an issue reducible to an elemental test. This formulation arose from another appeals court's analysis of common elements in prior cases,[58] but it fails to encompass all relationships that could give rise to a legal duty, the breach of which may create liability for mental anguish damages. The relationship between a person disposing of a decedent's remains and the next of kin is special, even without a contract.[59]
The contractual element is drawn from Pat H. Foley & Co. v. Wyatt .[60] There, a decedent's mother sued a funeral home after the casket was opened before and during the funeral, allowing a "grossly offensive odor" to emanate from her son's body.[61] The mother claimed damages (including mental anguish) based on the funeral home's contractual breach and negligence.[62] The jury found that the body was emitting offensive odors, that the funeral home knew or should have known about the odors but failed to advise the mother against opening the casket, and that this failure amounted to negligence.[63] But it also found that the funeral home "was not negligent in the manner of embalming."[64] On appeal, the funeral home argued that the judgment solely for mental anguish was improper because there was no right of recovery based on mental anguish alone.[65] The court of appeals upheld the judgment because "[t]he parties ... were not strangers to each other; their relationship was contractual."[66] We do not quarrel with Wyatt 's holding; contractual relationships that deal with intensely personal subjects such as funeral services may indeed give rise to mental anguish damages. But such a contract is not required if the defendant breaches an independent legal duty that gives rise to mental anguish damages.
In sum, Texas common law requires a special relationship, though not necessarily a contractual one, as the basis for mental anguish damages when the defendant *548 has negligently mishandled a corpse. We disapprove of Lions Eye Bank to the extent it holds to the contrary.[67]
* * * * *
Accordingly, the judgment of the court of appeals is
Affirmed .

Evanston Ins. Co. v. Legacy of Life, Inc. , 370 S.W.3d 377, 385 (Tex. 2012) ; Serv. Corp. Int'l v. Guerra , 348 S.W.3d 221, 231 (Tex. 2011) ; Parkway Co. v. Woodruff , 901 S.W.2d 434, 443 (Tex. 1995) ; Burnett v. Surratt , 67 S.W.2d 1041, 1042 (Tex. Civ. App.-Dallas 1934, writ ref'd), superseded by statute , Act of Feb. 27, 1934, 43rd Leg., 2d C.S., ch. 66, § 1, 1934 Tex. Gen. Laws 146, 157-158 (current version codified at Tex. Health & Safety Code § 711.002(a) ); R v. Price , 12 QBD 247, 252-254 (1884); see also W. Page Keeton, Prosser and Keeton on Torts § 54, at 361-362 (5th ed. 1984); 22A Am. Jur. 2d Dead Bodies § 117 (2013).

484 S.W.3d 248, 257 (Tex. App.-Eastland 2016).

Tex. Health & Safety Code § 716.004(a) ("A crematory establishment may not cremate human remains within 48 hours of the time of death indicated on a death certificate unless the waiting period is waived in writing by: (1) a justice of the peace or medical examiner of the county in which the death occurred; or (2) a court order.").

See id. § 711.002(a) (stating that with certain exceptions, "the following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedent's remains ... : (3) any one of the decedent's surviving adult children; ... (5) any one of the decedent's surviving adult siblings"). At the time of Lobban's death, Section 711.002 was silent as to how long a person with a lower priority must wait for the superior right holder to act before moving forward. In 2011, the Legislature amended Section 711.002 to provide for a 10-day waiting period. See Act of June 17, 2011, 82nd Leg., R.S., ch. 1336, § 2, 2011 Tex. Gen. Laws 3874, 3874 (codified at Tex. Health & Safety Code § 711.002(a-1) ).

Nelson also sought recovery for medical expenses and lost wages, as well as exemplary damages. He later conceded in the trial court that his only actual damages were for mental anguish. The trial court granted summary judgment for SCI on Nelson's claim for exemplary damages because there was no evidence that SCI acted with malice or specific intent to substantially injure Nelson. Nelson has not complained of this ruling.

962 S.W.2d 489, 496 (Tex. 1997).

Id.

The trial court also granted SCI's motion on the ground that Nelson could not recover mental anguish damages on the facts pleaded. SCI's arguments on both grounds are the same.

484 S.W.3d 248, 256-257 (Tex. App.-Eastland 2016).

See ids="6810066" index="11" url="https://cite.case.law/sw3d/484/248/#p257">id. at 255-257 ; Lions Eye Bank v. Perry , 56 S.W.3d 872, 877 (Tex. App.-Houston [14th Dist.] 2001, pet. denied) (stating that a contractual relationship is required to establish a special relationship between parties that could give rise to mental anguish damages).

484 S.W.3d at 255-256 (analyzing Evanston Ins. Co. v. Legacy of Life, Inc. , 370 S.W.3d 377, 383-385 (Tex. 2012) ).

Id. at 256.

Id. at 256-257.

Id. at 257.

60 Tex. Sup. Ct. J. 1351 (June 23, 2017).

City of Tyler v. Likes , 962 S.W.2d 489, 496 (Tex. 1997).

Id. (internal quotation marks omitted).

Id.

Boyles v. Kerr , 855 S.W.2d 593, 597 (Tex. 1993).

Likes , 962 S.W.2d at 494.

Parkway Co. v. Woodruff , 901 S.W.2d 434, 442 (Tex. 1995).

See id. at 442-443 (tracing the expansion of mental anguish damages).

See St. Elizabeth Hosp. v. Garrard , 730 S.W.2d 649, 650 (Tex. 1987) (holding that proof of physical injury is not required to recover for negligent infliction of emotional distress), overruled in part by Boyles v. Kerr , 855 S.W.2d 593, 595-596 (Tex. 1993).

Boyles , 855 S.W.2d at 597.

See Parkway , 901 S.W.2d at 444.

See City of Tyler v. Likes , 962 S.W.2d 489, 496 (Tex. 1997).

Id. at 494.

Id. at 496. Other jurisdictions have formulated similar restrictions with different language. For example, in Boyles v. Kerr , we positively quoted the California Supreme Court's formulation: "damages are recoverable only where there is a 'breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.' " 855 S.W.2d at 599 (quoting Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc. , 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278, 282 (1989) ).

Likes , 962 S.W.2d at 496.

Parkway , 901 S.W.2d at 444. SCI has not challenged whether Nelson provided sufficient evidence of mental anguish damages. Therefore, we conduct no analysis on whether Nelson has met his burden in this regard.

Likes , 962 S.W.2d at 495.

See 901 S.W.2d at 444.

See Serv. Corp. Int'l v. Guerra , 348 S.W.3d 221, 231 (Tex. 2011) ("But we cited Wyatt as an example of a case involving events that justified mental anguish damages; we did not cite Wyatt as a case in which the actions of the defendant or the occurrence itself constituted evidence of mental anguish that, absent other evidence, will support mental anguish damages. Even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish is required." (citations omitted) ).

Likes , 962 S.W.2d at 495.

Id.

Evanston Ins. Co. v. Legacy of Life, Inc. , 370 S.W.3d 377, 383 (Tex. 2012).

Id. (quoting R v. Price , 12 QBD 247, 252-254 (1884) ).

See ids="7314661" index="43" url="https://cite.case.law/sw3d/370/377/#p385">id. at 383.

Burnett v. Surratt , 67 S.W.2d 1041, 1042 (Tex. Civ. App.-Dallas 1934, writ ref'd) ("There is no property in a dead man's body, in the usually recognized sense of the word, yet it may be considered as a sort of quasi property, in which certain persons have rights therein, and have duties to perform. The right to bury a corpse and preserve its remains is a legal right".), superseded by statute , Act of Feb. 27, 1934, 43rd Leg., 2d C.S., ch. 66, § 1, 1934 Tex. Gen. Laws 146, 157-158 (current version codified at Tex. Health & Safety Code § 711.002(a) ).

370 S.W.3d at 384 (quoting Culpepper v. Pearl St. Bldg., Inc. , 877 P.2d 877, 880 (Colo. 1994) ).

Id. at 385.

730 S.W.2d 649, 650 (Tex. 1987), overruled in part by Boyles v. Kerr , 855 S.W.2d 593, 595-596 (Tex. 1993).

Id. at 650, 652, 654.

Id. at 654 (Spears, J., concurring in the judgment). Justice Spears cited two appellate court cases in which mental anguish damage recoveries had been upheld and we denied review, noting that the judgments were correct: Classen v. Benfer , 144 S.W.2d 633, 635 (Tex. Civ. App.-San Antonio 1940, writ dism'd judgm't cor.), and Aetna Life Ins. Co. v. Love , 149 S.W.2d 1071, 1077 (Tex. Civ. App.-El Paso 1941, writ dism'd judgm't cor.).

Boyles , 855 S.W.2d at 595.

348 S.W.3d 221, 231 (Tex. 2011).

Id. at 226.

Id. at 233.

Id. at 232.

Id. at 231.

144 S.W.3d 633, 635 (Tex. Civ. App.-San Antonio 1941, writ dism'd judgm't cor.).

99 S.W.2d 646, 648 (Tex. Civ. App.-Beaumont 1936), aff'd , 132 Tex. 280, 121 S.W.2d 986 (1938).

Boyles v. Kerr , 855 S.W.2d 593, 597 (Tex. 1993).

56 S.W.3d 872 (Tex. App.-Houston [14th Dist.] 2001, pet. denied).

Id. at 875.

Id. at 875, 878.

Id. at 877 (citing Johnson v. Standard Fruit & Vegetable Co. , 984 S.W.2d 633, 638 (Tex. App.-Houston [1st Dist.] 1997), rev'd on other grounds , 985 S.W.2d 62 (Tex. 1998) ).

See Johnson , 984 S.W.2d at 638 ("We observe that in the 'special relationship' category of cases ... there appear to be three common elements".).

We do not express an opinion on the second two "elements", except that we reject the attempt to create an elemental test for whether a special relationship exists.

442 S.W.2d 904 (Tex. App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.).

Id. at 905.

Id.

Id. at 905-906.

Id.case-ids="10149743" index="76" url="https://cite.case.law/sw2d/442/904/"> at 906.

Id.

Id.

Having concluded that Nelson may recover mental anguish damages under the common law, we need not consider his argument that Section 711.002 of the Health and Safety Code creates a special relationship between the person disposing of a decedent's remains and the person with the superior right to control that disposition. The statute does not purport to create liability for failure to comply with the priority list. Subsection (i) absolves certain defendants from liability when complying with written directions from the decedent or from any person claiming the right to control the disposition of a decedent's remains. While this provision might be read to suggest that liability exists under the statute for noncompliance, we need not consider whether it does when liability under the common law is clear.