**AFFIRMED; Opinion Filed April 23, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00462-CV

**SIG-TX ASSETS, LLC D/B/A LINCOLN FUNERAL HOME, Appellant**
**V.**
**BEATRICE SERRATO, INDIVIDUALLY, BEATRICE SERRATO,**
**AS MOTHER AND NEXT FRIEND OF M.S., A MINOR CHILD,**
**PHILLIP SERRATO, AND SYLVIA RAMIREZ, Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-17209**

## MEMORANDUM OPINION

Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

Appellant SIG-TX Assets, LLC d/b/a Lincoln Funeral Home (SIG-TX) appeals the trial

court's denial of its motion to compel arbitration of the claims filed against it by appellees Beatrice

Serrato, individually and as next friend of M.S., a minor child, Phillip Serrato, and Sylvia Ramirez

(collectively appellees). SIG-TX generally contends that although appellees did not sign an

arbitration agreement with it, they are bound to arbitrate their claims under the equitable theory of

direct-benefits estoppel.[1] SIG-TX also challenges the trial court's evidentiary rulings on its

objections to Beatrice Serrato's affidavit. For the reasons that follow, we conclude SIG-TX (1)

---

[1] In its opening appellate brief, SIG-TX presented four theories under which appellees should be compelled to arbitrate. In its reply brief and at the oral argument of this cause, however, SIG-TX abandoned three of those theories and elected to proceed solely on the theory that appellees were required to arbitrate pursuant to the doctrine of direct-benefits estoppel.

failed to establish the trial court abused its discretion in denying its motion to compel arbitration, and (2) did not establish the trial court's evidentiary rulings constituted reversible error. Accordingly, we affirm the trial court's order denying SIG-TX's motion to compel arbitration.

**BACKGROUND**

Appellees are, respectively, the daughter-in-law, biological grandchildren, and biological daughter of decedent Maria Serrato. SIG-TX took possession of Serrato's body pursuant to a contract for funeral services and a cemetery contract signed by Juana Serrato, another one of Serrato's daughters-in-law. Juana is not a party in this lawsuit. The present dispute arose after SIG-TX presented to appellees the wrong body for a private family viewing that was held before the funeral.

According to appellees' petition, although they immediately realized the body presented to them on December 18 was not that of their loved one, a funeral home employee insisted it was the correct body. Appellees allege the employee checked the ankle identification on the body presented and discovered it was not Maria Serrato but another decedent whose first name was also "Maria." Appellees assert the employee did not reveal the true identity of the body to them at that time. Instead, appellees were later informed that Serrato's body had been buried on December 18 after a funeral service held for the family of the other decedent "Maria." The next day, December 19, Serrato's body was exhumed from the other grave and her clothes, accessories, and make-up were changed. Appellees filed this lawsuit against SIG-TX asserting claims for negligence, negligence per se, gross negligence, intentional infliction of emotional distress, and fraud. They sought damages for pain, medical expenses, mental anguish, loss of enjoyment of life, and exemplary damages.

SIG-TX moved to compel arbitration of appellees' claims based on arbitration clauses contained in the funeral contract and the cemetery contract. Specifically, the arbitration clause in the funeral contract stated:

> ARBITRATION: YOU AGREE THAT ANY CLAIM YOU MAY HAVE RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT (INCLUDING ANY CLAIM OR CONTROVERSY REGARDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA"); PROVIDED, HOWEVER, THAT THE FOREGOING REFERENCE TO THE AAA RULES SHALL NOT BE DEEMED TO REQUIRE ANY FILING WITH THAT ORGANIZATION, NOR ANY DIRECT INVOLVEMENT OF THAT ORGANIZATION. THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES. IF THE PARTIES FAIL TO OR ARE UNABLE TO AGREE ON THE SELECTION OF AN APPROPRIATE ARBITRATOR, THE AAA SHALL SELECT THE ARBITRATOR PURSUANT TO ITS RULES AND PROCEDURES UPON THE APPLICAIOTN (SIC) OF ONE OR BOTH PARTIES. THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, ANY PERSON WHO CLAIMS TO BE A THIRD PARTY BENEFICIARY OF THIS AGREEMENT, ANY OF THE SELLER'S EMPLOYEES OR AGENTS, ANY OF THE SELLER'S PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, AND ANY OF THE EMPLOYEES OR AGENTS OF THOSE PARENT, SUBSIDIARY OR AFFILIATE CORPORATIONS. EXCEPT AS MAY BE REQUIRED BY LAW, NEITHER PARTY NOT (SIC) AN ARBITRATOR MAY DISCLOSE THE EXISTENCE, CONTENT, OR RESULTS OF ANY ARBITRATION HEREUNDER WITHOUT THE PRIOR WRITTEN CONSENT OF BOTH PARTIES.

The cemetery contract contained a similar arbitration provision:

> ARBITRATION: THE PARTIES HERETO AGREE THAT ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES OF ANY KIND OR CHARACTER ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY PARTY'S PERFORMANCE OF THIS AGREEMENT OR THE GOODS AND/OR SERVICES PROVIDED PURSUANT TO THIS AGREEMENT SHALL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION BEFORE A SINGLE ARBITRATOR AND CONDUCTED IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION AND STATE LAW. SUCH ARBITRATION SHALL BE HELD IN THE STATE AND COUNTY OF EXECUTION OF THIS AGREEMENT, OR ELSEWHERE IN THE EVENT ALL PARTIES TO THIS AGREEMENT SO CONSENT. THE PARTIES HERETO SPECIFICALLY

WAIVE ANY RIGHTS TO TRIAL OF ANY CLAIMS BY A JUDGE OR JURY, AT ANY TIME PRIOR TO THE COMMENCEMENT OF AN ARBITRATION PROCEEDING AS PROVIDED FOR HEREINABOVE, THE PARTIES SHALL AT ALL TIMES HAVE THE RIGHT TO MUTUALLY AGREE TO MEDIATE OR SETTLE A DISPUTE.

Appellees opposed SIG-TX's motion arguing they were not parties to, and did not sign, any contract with SIG-TX. In support of their position, appellees submitted the affidavit of Beatrice Serrato. Among other things, Beatrice stated that Juana Serrato signed the agreement because she accompanied Maria in 2008 at the initial meeting with the funeral home and made payments on Maria's behalf. Beatrice further testified that she did not make any payments to the funeral home nor did she negotiate or change the terms of the agreement between Maria and the funeral home. SIG-TX objected to the following statements in Beatrice's affidavit as hearsay and not based on personal knowledge:

(1) To the best of my knowledge, the balance had been paid by my mother-in-law and Juana Serrato prior to her death.

(2) To the best of my knowledge, the terms were decided without my presence, before the death of my mother-in-law.

(3) To the best of my knowledge, my mother-in-law selected certain details regarding plot location, memorial stone, and memorial stone inscription during her first meeting with the funeral home in 2008, and prior to the death of her husband which occurred in September of 2008.

After hearing oral argument on the motion, the trial court overruled SIG-TX's objections to the affidavit statements and denied the motion to compel arbitration. This interlocutory appeal ensued.

**ANALYSIS**

In its first, third, and fourth issues, SIG-TX generally contends that the trial court erred in denying its motion to compel appellees to arbitrate their claims because they were bound by the

–4–

arbitration clauses in the funeral and cemetery contracts under the theory of direct-benefits estoppel.[2]

We review a trial court's ruling on a motion to compel arbitration under an abuse of discretion standard. *See Henry v. Cash Biz, L.P.*, 551 S.W.3d 111, 115 (Tex. 2018). Under that standard, we defer to the trial court's factual determinations when they are supported by evidence, but review de novo the trial court's legal determinations. *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.).

Generally, a party seeking to compel arbitration under the Federal Arbitration Act (FAA)[3] must establish there is a valid agreement to arbitrate and the claims raised fall within the scope of that agreement. *See id.* Under the FAA, whether an arbitration agreement is binding on a nonparty is one of the "gateway matters" for the courts to decide. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel establishes the existence of a valid arbitration agreement. *McLendon*, 409 S.W.3d at 827. "Even the exceptionally strong policy favoring arbitration cannot justify requiring litigants to forego a judicial remedy when they have not agreed to do so." *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied).

The question presented here is whether a binding arbitration agreement exists between SIG-TX and appellees. SIG-TX, as movant, bore the burden of establishing the arbitration agreements bind appellees as non-signatories. *See D.R. Horton-Emerald, Ltd. v. Mitchell*, No. 01-17-00426-CV, 2018 WL 542403, at *3 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, no pet.)

---

[2] Specifically, SIG-TX's issues are as follows: (1) the trial court erred in denying SIG-TX's motion to compel arbitration and motion to abate proceedings pending arbitration; (3) the trial court erred in denying SIG-TX's motion to compel arbitration; and (4) the trial court erred in refusing to stay its own proceedings pending the completion of arbitration.

[3] The parties do not dispute that the FAA governs here.

(mem. op.). "[A] party cannot be forced to arbitrate absent a binding agreement to do so." *See Jody James Farms, JV v. Altman Grp., Inc*., 547 S.W.3d 624, 632 (Tex. 2018). Non-signatories may be bound to an arbitration clause in accordance with general rules of state contract and agency law or equity under six theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Id.* at 633. Here, SIG-TX argues that the equitable estoppel doctrine known as direct-benefits estoppel precludes appellees from avoiding arbitration even though they did not sign the funeral and cemetery contracts containing the arbitration clauses that SIG-TX seeks to enforce against them.

"Direct-benefits estoppel applies to parties who seek 'to derive a direct benefit' from a contract with an arbitration agreement." *Id.* at 637. There are two ways direct-benefits estoppel can bind a non-signatory to an arbitration agreement. *See Weekley Homes*, 180 S.W.3d at 132. The first way the doctrine may apply is when the non-signatory's claims (and thus the defendant's liability) arise solely from the contract or must be determined by reference to it. *See id*. The second way is when the non-signatory deliberately seeks and obtains direct and substantial benefits from the contract containing the arbitration clause, irrespective of whether the non-signatory's lawsuit claims are based on the contract. *See id*. at 132–33. SIG-TX asserts that both avenues of direct-benefits estoppel are implicated here. We do not agree.

With respect to the first application of direct-benefits estoppel, appellees do not purport to make any claim based on either the funeral contract or the cemetery contract. Instead, they allege damages based on SIG-TX's mishandling of Maria's body, as well as SIG-TX's subsequent actions after appellees questioned whether the body they were shown at the private viewing was that of Maria Serrato. We view these duties as separate and independent from any duties arising under the contracts. "A non-signatory cannot be compelled to arbitrate when claims merely 'touch

matters' covered by a contract or 'are dependent upon' a contract; instead, the claims must rely on the terms of the contract." *See Carr*, 337 S.W.3d at 498.

Indeed, although SIG-TX's duty to prepare and inter Maria's body arose from the contracts, there is an independent duty under Texas tort law to immediate family members not to negligently mishandle a corpse. *See SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539 (Tex. 2018) (negligent mishandling of a corpse is a legal duty where mental anguish damages may be available). Likewise, the duties not to defraud appellees or intentionally inflict emotional distress on them are duties that do not arise from the funeral or cemetery contracts nor must SIG-TX's liability for these torts be determined by reference to the contracts. *See Weekley Homes*, 180 S.W.3d at 132 (claims must be arbitrated if liability arises solely from contract or must be determined by reference to it).

The dissent would conclude that the existence of an independent tort duty makes no difference here because it did not in *Weekley*.[4] "[A]pplying direct-benefits estoppel to compel arbitration of a tort claim that does not rely upon—or require reference to—the contract containing the arbitration clause *is the exception, not the rule*." *Rocha v. Marks Transp., Inc.*, 512 S.W.3d 529, 539 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (emphasis added) (reversing order compelling arbitration in slip-and-fall at car dealership when plaintiff's husband had signed arbitration agreement years prior upon purchasing car). SIG-TX seeks to shoehorn appellees' claims into a contract box by the logic that there would be no relationship between the parties but for the contract. Though non-signatory plaintiffs will not always be able to avoid arbitration clauses by pleading tort claims and tort damages, appellees here have suffered injuries outside the

---

[4] The dissent does not meaningfully distinguish *Jody James Farms*, the supreme court's most recent direct-benefits estoppel case and a case that refuses to apply direct-benefits estoppel.

contract and request damages outside the contract. The dissent's proposed analysis invites a construction of direct-benefits estoppel that may cause this exception to swallow the rule.

In reaching the conclusion that appellees' claims are not based on the funeral and cemetery contracts, we are unpersuaded by SIG-TX's contention that because appellees Beatrice, M.S., and Phillip are not Maria Serrato's "next of kin," they have not brought claims that arise from general obligations imposed by law.[5] In support of its position, SIG-TX relies on *SCI Texas Funeral Services, Inc. v. Nelson.* In *Nelson*, the decedent's son sued the funeral home for cremating his mother's body without his permission. 540 S.W.3d at 542. The funeral home argued that absent evidence of malice on its part, physical injury to Nelson, or shocking and disturbing injuries, Nelson could not recover mental anguish damages without establishing a special relationship with the funeral home, specifically, contractual privity. *See id*. at 546. The Texas Supreme Court reasoned that although common law requires a special relationship to support mental anguish damages for negligent mishandling of a corpse, the special relationship does not have to be a contractual one. *Id*. Thus, Nelson, as decedent's son and next of kin having the superior right to control the disposition of his mother's remains, could recover mental anguish damages for the funeral home's cremation of his mother's body without his consent. *See id*. at 545.

Contrary to SIG-TX's position, *Nelson* does not stand for the position that appellees' claims do not arise from an independent legal duty because they are not Maria Serrato's next of kin. The *Nelson* court did not analyze or define the scope of what relationships or proximity of kin could give rise to a legal duty that, when breached, would create liability for mental anguish damages. Instead, the court merely stated that a contract is not required to recover mental anguish

---

[5] SIG-TX does not assert that Sylvia Ramirez, the biological daughter of Maria, is not Maria's next of kin. But SIG–TX still contends its duties to Ramirez arise from the funeral and cemetery contracts.

damages if the defendant breaches an independent legal duty that gives rise to mental anguish damages. *See id*. at 547.

SIG-TX argues that even if appellees' lawsuit claims do not seek a direct benefit from the funeral and cemetery contracts, appellees still must arbitrate because they deliberately sought and obtained direct benefits from the contracts outside of the lawsuit.[6] Specifically, SIG-TX alleges appellees participated in negotiating the contracts, took an active role in their execution and performance, and derived benefits from both contracts as the surviving family members of Maria Serrato. Moreover, SIG-TX asserts appellees insisted it treat them as parties to the contract after presenting them with the wrong body for viewing on December 18.

To support its contentions, SIG-TX submitted the affidavit of its funeral director who stated that Beatrice had called the day before Maria's death to inquire as to what was owed on Maria's prearrangement contract. Beatrice also called the funeral home to advise of Maria's passing and provided the information for the funeral and to prepare the death certificate. The funeral home's "first call" sheet listed Beatrice, daughter-in-law, as Maria's next-of-kin. The funeral director also indicated that at a December 16 meeting with Beatrice, Juana Serrato, Ana Serrato, and two of Maria's grandsons, "Beatrice Serrato spoke on behalf of the family and was the primary decision maker." In response to the funeral director's question regarding who would be signing the contracts, Beatrice stated that Juana would be signing the funeral and cemetery contracts because Juana and not Beatrice was the next-of-kin. SIG-TX also relies on Beatrice's affidavit stating that after appellees were told the body they had viewed on December 18 was not that of Maria Serrato,

---

[6] On pages 23 through 25 of its reply brief, SIG-TX also asserts that because appellees seek to hold it liable for its performance of the funeral and cemetery contracts, they are necessarily third-party beneficiaries of the contracts. We need not address this assertion because SIG-TX confirmed at oral argument that it was abandoning this theory as a basis to compel arbitration.

Beatrice again met with the funeral home on December 19 to discuss Maria's exhumation and reburial and where SIG-TX requested she select a new casket.

Initially, we question whether SIG-TX's primary reliance on Beatrice's actions supports its contention that all appellees deliberately sought and obtained direct benefits from the contracts. Nevertheless, we cannot conclude that Beatrice's actions establish conclusively that she or the other appellees deliberately sought and obtained direct benefits from the contracts. There is no evidence appellees ever acted under the authority of the contracts or sought to enforce any specific provision of the contracts. Moreover, any benefits appellees received from the contracts were nothing more than what any other family member or friend receives from participating in the funeral and burial of a loved one. As noted in *Weekley*, the equitable nature of direct-benefits estoppel may render firm standards inappropriate, requiring trial courts to exercise some discretion based on the facts of each case. *See Weekley Homes*, 180 S.W.3d at 135. Based on the record in this case, we cannot conclude the trial court abused its discretion in determining appellees did not deliberately seek and obtain direct benefits from the contracts. Having concluded that SIG-TX did not meet its burden to establish a valid arbitration agreement between it and appellees on the basis of direct-benefits estoppel, we resolve its first, third, and fourth issues against it.

In its second issue, SIG-TX complains about the trial court's adverse rulings with respect to its objections to Beatrice's affidavit. We review a trial court's ruling admitting or excluding evidence for an abuse of discretion. *See McClendon*, 409 S.W.3d at 825. For an evidentiary ruling to constitute reversible error, however, the complaining party must not only show the trial court committed error, but also show that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See id*. We review the entire record in making that determination. *See id.*

–10–

Here, the statements objected to by SIG-TX largely addressed the decedent's actions with respect to the funeral and cemetery contracts. For purposes of the application of direct-benefits estoppel, however, it is the actions of the non-signatories that are determinative. *See Weekley Homes*, 180 S.W.3d at 132–33. Thus, even if the objected-to statements were erroneously admitted and considered by the trial court, the error did not cause rendition of an improper judgment. We resolve SIG-TX's second issue against it.

## CONCLUSION

Based on the record before us, we affirm the trial court's order denying SIG-TX's motion to compel arbitration.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Bridges, J., dissenting

180462F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SIG-TX ASSETS, LLC D/B/A LINCOLN
FUNERAL HOME, Appellant

No. 05-18-00462-CV      V.

BEATRICE SERRATO,
INDIVIDUALLY, BEATRICE
SERRATO, AS MOTHER AND NEXT
FRIEND OF M.S., A MINOR CHILD,
PHILLIP SERRATO, AND SYLVIA
RAMIREZ, Appellees

On Appeal from the 95th District Court,
Dallas County, Texas
Trial Court Cause No. DC-17-17209.
Opinion delivered by Justice Partida-
Kipness, Justices Bridges and Carlyle
participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant's motion to compel arbitration is **AFFIRMED**.

It is **ORDERED** that appellees Beatrice Serrato, individually, Beatrice Serrato, as mother and next friend of M.S., a minor child, Phillip Serrato, and Sylvia Ramirez recover their costs of this appeal from appellant SIG-TX Assets, LLC d/b/a Lincoln Funeral Home.

Judgment entered this 23rd day of April, 2019.