

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00292-CV
_____

**EVAN MATSHES, SAM ANDREWS, NATIONAL AUTOPSY ASSAY GROUP, LLC, AND NAAG PATHOLOGY LABS, PC, APPELLANTS**

V.

**REBECCA VILLARREAL ORTIZ, APPELLEE**

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2019-534,241, Honorable Ruben Reyes, Presiding

June 8, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

This is an interlocutory appeal[1] from a district court order denying a motion to dismiss under the Texas Citizens Participation Act (TCPA)[2] brought by Defendants/Appellants Sam Andrews, M.D.; Evan Matshes, M.D.; National Autopsy Assay Group, LLC ("NAAG"); and NAAG Pathology Labs, PC ("NAAG Labs"). Appellee

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12) (West Supp. 2020).

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011 (West 2020 & West Supp. 2020). Unless otherwise indicated, citation to the TCPA (or the Act) shall be "*Id.* § ____."

and Plaintiff in the district court is Rebecca Ortiz. As detailed further herein, we reverse, in part, and affirm, in part, the order denying the motion to dismiss, and remand this case to the district court for further proceedings.

Background

Dr. Matshes, NAAG, and NAAG Labs introduce their brief with an apt observation: "Ortiz's allegations in this case are reprehensible, and the affidavits Ortiz filed present gruesome and disturbing allegations." Appellants vehemently deny Ortiz's allegations. This Court does not possess the responsibility of determining whether Ortiz's allegations are true. Our task here is merely to decide whether the TCPA's provisions affect how Ortiz might prove them.

In this lawsuit, Ortiz alleges in her live pleading that Appellants improperly and illegally removed, retained, and shipped to San Diego, California, the remains of E.C., a 10-year-old girl who died in Lubbock County, Texas. E.C. was Ortiz's granddaughter. Ortiz adopted E.C. in 2011 after the child received a traumatic brain injury at the hands of her parents. E.C. allegedly suffered from complications the remainder of her life. E.C. was admitted to the hospital where she is said to have suffered from pulmonary and infection complications. She passed away while in a Lubbock hospital on September 15, 2018, the same day she was admitted.

Appellants initially obtained access to E.C.'s corpse by virtue of Andrews' contractual role as Lubbock County's Chief Medical Examiner, and through NAAG's contractual responsibilities in operating the Chief Medical Examiner's office and providing administrative support. Matshes is the managing director of NAAG Labs, and NAAG

2

employs Matshes and Andrews. NAAG purportedly has a subcontract with NAAG Labs for Andrews' services.

According to his affidavit, Andrews determined an autopsy on E.C. was necessary given the circumstances of E.C.'s health history. However, he was personally unable to perform the autopsy at the time. NAAG contracted with Stephen Pustilnik, M.D., a pathologist who had performed autopsies for the medical examiner's office in the past. In a letter dated September 19, 2018, on NAAG Labs stationery to Dr. Pustilnik, Andrews told Pustilnik he was going to perform several autopsies over the next few days. He said, "We have particular administrative interest" in two cases – and identified E.C.'s case. Given the "high profile nature" of E.C.'s and another's case, Andrews' letter outlined a "few basic expectations we have . . . ." For E.C., this meant that, in addition to performing standard, complete pediatric forensic autopsy responsibilities, Pustilnik was instructed to:

> 1. Preserve the dura mater and brain in 20% formalin, suspended by a string under the basilar artery
>
> 2. Remove the cervical spine (skull base to T1 or so) and preserve in10% formalin
>
> 3. Remove and preserve any acute or remote skull fractures (or portion thereof) that are obvious to you
>
> 4. Remove and preserve (in 20% formalin) the eyes and surrounding periocular soft tissues
>
> 5. Remove and preserve (in 20% formalin) the remaining portions of the thoracolumbar spinal cord
>
> 6. Remove, flush, hang and preserve the heart in 10% formalin
>
> 7. Remove, perfuse (through the bronchial tree) and preserve each lung
>
> 8. Liberally retain tissues in your stock jar (do not prepare any histology cassettes at this time; this case will be "cut in" at our labs in San Diego)[.]

Pustilnik was also informed that a chief forensic pathology technician was being flown to Lubbock to provide assistance, "to help you, and to represent the Lab," and in assisting NAAG Labs in processing the specimens. Pustilnik generally performed as instructed.

Ortiz sued Appellants, alleging 1) "mishandling of remains," 2) interfering "with [her] right to possession [of E.C.'s remains] for final disposition," 3) committing "civil theft and conversion," and 4) engaging in a "civil conspiracy." As a part of the legal theory behind her allegations, Ortiz challenges that Appellants' reasons for removing and retaining E.C.'s tissues go well beyond the duties as Lubbock County's medical examiner. She alleges that Appellants harvested and retained the tissues of E.C. and other children as a part of "a plan to collect and retain the tissues of decedents without forensic justification."[3] She claims that, without obtaining parent approval, Appellants retain excess tissue of deceased children in a "human tissue bank" in San Diego to further the private research interests of Matshes and/or Andrews.

Pustilnik provides evidentiary support for Ortiz's allegations. He said that based on the letter and his conversations with Dr. Matshes, NAAG Labs' forensic pathology technician would have performed the directives in the September 19 letter even if he had refused. Pustilnik opined "there was no mystery" to the cause, manner, or mechanism of E.C.'s death, which was the delayed effect of blunt head trauma, and that "none of the tissues retained by doctors Matshes or Andrews determine or alter this cause and manner

---

[3] Logan Kuss, who served as an autopsy technician during NAAG's contract with the county, testified via affidavit that for every deceased child under the age of 10, "NAAG's practice was to take the eyes, brain, heart, lungs, and spinal cord, in every case – natural, homicide, and other." Both Kuss and Tita Graves, an investigator for the medical examiner's office, presented evidence that Matshes and Andrews harvested the tissues for research purposes.

4

of death . . . ." Instead, E.C.'s organs and tissues were removed and sent to NAAG Lab's facility in San Diego to support Matshes' stated research interests.

Appellants questioned Pustilnik's abilities and hotly contest Ortiz's allegations. They filed a TCPA motion to dismiss, arguing 1) the Act applied; 2) Ortiz could not make a prima facie case by clear and specific evidence for the elements of each pleaded claim; and 3) affirmative defenses of official immunity and qualified privilege. Ortiz responded to the motion, contesting each asserted ground for dismissal.

Following a non-evidentiary hearing, the district court denied the motion to dismiss by signed written order. The court concluded the TCPA applied and that Ortiz satisfied its evidentiary burden, but that the Appellants did not prove their affirmative defenses. This appeal followed.

Analysis

The purpose of the TCPA has been articulated in other opinions and requires no lengthy discussion here. *See In re Lipsky,* 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding) (holding that TCPA's purpose "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them."). The Act empowers a party to seek dismissal if "a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* §§ 27.003(a), 27.005(b).[4] If the movant makes this initial showing by a preponderance of evidence, the trial court "shall" dismiss the legal action unless the

---

[4] Although the Legislature amended the Act in 2019, the amendments only apply to actions filed on or after September 1, 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 TEX. GEN. LAWS 684, 687. This appeal is governed by the prior law.

nonmovant establishes by "clear and specific evidence" a prima facie case for each essential element of the claim. *Id.* § 27.005(c); *Youngkin v. Hines,* 546 S.W.3d 675, 679 (Tex. 2018). If the nonmovant discharges its evidentiary responsibility, the burden shifts back to the movant to prove by a preponderance of the evidence each essential element of any valid defense to the nonmovant's claim. *Id.* § 27.005(d); *Youngkin*, 546 S.W.3d at 679-80.

We review the district court's denial of Appellants' motion to dismiss de novo., making "an independent determination and apply[ing] the same standard used by the trial court in the first instance." *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (internal quotation omitted). We decide issues of statutory construction de novo. *ExxonMobil Pipeline Co. v. Coleman,* 512 S.W.3d 895, 899 (Tex. 2017) (per curiam). We review the pleadings and the relevant evidence in the light most favorable to the nonmovant. *W. Mktg. v. AEG Petroleum, LLC,* 616 S.W.3d 903, 914 (Tex. App.—Amarillo 2021, no pet.) (mem. op.). "When a legal action is in response to actions both protected and unprotected under the TCPA, the entire suit is not subject to dismissal; only that part relating or responding to the protected action is." *Id.* at 911.

A. Whether Ortiz's Suit Was Based On, Relates to, or is In Response to Appellants' Right of Free Speech.

Appellants raise a single general issue and challenge each step of the TCPA analysis via multiple sub-issues. We thus begin with the question of whether Ortiz's lawsuit comes within the Act. The burden to prove so rests with Appellants to prove the grounds asserted, *viz.,* that Ortiz's suit was based on, relates to, or is in response to Appellants'

6

exercise of the right of free speech or right of association. *Id.* § 27.005.[5] At the core of each of these asserted rights is a communication. *See id.* § 27.001(a)(2),(3) (defining the "exercise of the right of association" to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests;" defining "exercise of the right of free speech" to mean "a communication made in connection with a matter of public concern."). A "communication" has been defined to "include[] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(a)(1).

The communications alleged to be protected both relate to Dr. Pustilnik's role in performing the autopsy: (1) Andrews' letter providing directions, and (2) communications between Matshes and Andrews regarding asking Pustilnik to perform the procedure.[6] Appellants' motion identifies no other communication. The applicability to Ortiz's legal action is determined by the claims alleged in her pleadings. *Hersh v. Tatum,* 526 S.W.3d 462, 467 (Tex. 2017) ("the plaintiff's petition . . ., as so often has been said, is the best and all-sufficient evidence of the nature of the action.") (internal quotation marks and citation omitted). *See also Adams v. Starside Custom Builders, LLC,* 547 S.W.3d 890, 897 (Tex.

---

[5] Ortiz argued in the district court that the TCPA did not apply. On appeal, she did not respond to Appellants' arguments that the TCPA was applicable. As part of our de novo review, we are to make an independent determination under the same standard as the district court in spite of her absence of briefing on the question. *See Pacheco v. Rodriguez*, 600 S.W.3d 401, 407 (Tex. App.—El Paso 2020, no pet.) ("[T]he unique aspect of the TCPA convinces us that we must, as part of our de novo review, be satisfied that the movant has met the initial burden under the statute to show the disputed claim is based on, relates to, or is in response to the exercise of free speech, petition, or associational rights."); *Joselevitz,* 524 S.W.3d at 859.

[6] In their motion to dismiss, they elaborate on these communications as pertaining to whether "they should ask Dr. Pustilnik to perform the autopsy, despite their concerns about his ability."

2018) ("the unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings.").

## 1. Alleged Mishandling of Remains; Failure to Implement Policies and Procedures (Counts 1-6).

In her cause of action alleging Appellants mishandled E.C.'s remains, Ortiz alleged Appellants breached their duties to her in various ways: by (1) removing and retaining excessive tissue; failing to return to E.C.'s body those portions of tissue not required for determining cause and manner of death; and (3) failing to implement policies and procedures to require only necessary tissue was removed and retained. We hold that some of these allegations pertain to protected communications as defined under the TCPA, while others have not been shown to have any nexus to a communication.

With regard to Ortiz's allegations claiming an injury due to the alleged *removal* of excessive amounts of E.C.'s organs and tissue via autopsy, we hold that such claims relate to Andrews' right to free speech as defined in the Act. Andrews' letter is evidence of a written "communication;" it instructed Pustilnik of the organs and tissues to be removed from E.C., who Andrews believed suffered "a possible delayed abusive head trauma death." Forensic autopsies play an important role in determining the cause and manner of death; they are frequently undertaken to obtain evidence for use in criminal prosecutions. *See* TEX. CODE CRIM. PROC. ANN. art. 49.25 §§ 6, 9 (West Supp. 2020). We hold that a medical examiner's written instructions to another for performing the pediatric forensic autopsy of a child suspected to have died from abusive head trauma constitute communications related to a matter of public concern. *See id.* § 27.001(7)(A)-(C) (defining matters of public concern as including issues related to health, safety,

8

community well-being, and the government).  *See also Hersh*, 526 S.W.3d at 468 (holding teen suicide prevention and awareness is matter of public concern); *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (holding crime and prosecutions constitute matters of public concern).

However, Ortiz's pleadings do not end at Pustilnik's completion of E.C.'s autopsy, nor do the alleged actions of the Appellants.  Ortiz continues by alleging Appellants also mishandled E.C.'s remains after their removal by shipping them to NAAG Labs where they have been retained for the purpose of supporting Appellants' private research efforts in violation of law.[7]  Appellants do not identify any communication in connection with the alleged transmittal, retainage, or private research efforts, nor do they identify a communication pertaining to the alleged absence of appropriate policies or procedures regarding tissue removal or retention.[8]  We therefore hold these theories proffered to prove Ortiz's "mishandling" claims are not based on, do not relate to, and are not in response to Appellants' exercise of the rights of free speech or of association.  *See Pacheco*, 600 S.W.3d at 410 (claim for negligence not actionable: "[W]hen a claim does not allege a communication, and is instead based on a defendant's conduct, the TCPA is not implicated."); *Ray v. Fikes*, No. 02-19-00232-CV, 2019 Tex. App. LEXIS 10584, at *7 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.) (holding alleged malpractice in failing to act before limitations expired was not in connection with any communication and therefore could not invoke the TCPA); *MVS Int'l Corp. v. Int'l Advert.*

---

[7] Ortiz generally alleged that deceased children's "heart, lungs, brains, spines, and eyes, etc. were collected and shipped to NAAG's Lab tissue bank in San Diego, California using paint cans."

[8] Ortiz also alleges that NAAG Labs' collection of E.C.'s tissues was without consent and is unauthorized by law.

*Sols., LLC*, 545 S.W.3d 180, 198 (Tex. App.—El Paso 2017, no pet.) (holding breach of contract claim did not implicate TCPA when allegations did not turn on defendant's communications).

## 2. Alleged Interference With Right to Possession for Final Disposition; Civil Theft and Conversion (Counts 7-8).

We similarly find no connection between Appellants' alleged rights of free speech and association and Ortiz's allegations that Appellants have retained E.C.'s remains in violation of Ortiz's legal rights to final disposition. Ortiz alleges that as E.C.'s next of kin, she possesses a "quasi-property right" protected by common law and statute to dispose of all of E.C.'s remains.[9] Ortiz also complains that Appellants' misappropriation of E.C.'s remains occurred without her effective consent. There is no evidence that Appellants' alleged decision to retain or use E.C.'s tissue for future research is in connection with their communications to or about Pustilnik regarding performance of the autopsy, and Appellants direct us to no other communications. Other appellate courts have held, albeit on different grounds, that the TCPA does not protect alleged conspiracies to convert or unlawfully appropriate another's property. *See Bandin v. Free & Sovereign Veracruz*, 590 S.W.3d 647, 653 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 585 (Tex. App.—Fort Worth 2019, pet. denied). We hold the TCPA is not implicated in Ortiz's seventh and eighth counts. *See Pacheco*, 600 S.W.3d at 410.

---

[9] *See* TEX. HEALTH & SAFETY CODE ANN. § 711.002(a) (West Supp. 2020) (designating priority of persons with the right to control the disposition of decedent's remains); *SCI Tex. Funeral Servs. v. Nelson*, 540 S.W.3d 539, 546 (Tex. 2018) (holding "negligent mishandling of a corpse is one such legal duty where mental anguish damages may be available.").

10

B. Whether Ortiz Presented Clear and Specific Evidence Supporting The Claims Covered by the TCPA.

We now zig-zag to the second prong of the TCPA: examining clear and specific evidence. Most of Ortiz's allegations are inapplicable to the reach of the second prong because they do not involve "communications" – essential to Appellants' assertion of the rights of free speech and free association. The only allegations that involve Appellants' alleged free speech rights pertain to Pustilnik's *removal* of E.C.'s organs and tissue per Andrews' instructions. Accordingly, we examine whether Ortiz presented the district court with clear and specific evidence that the autopsy-related removal of E.C.'s organs and tissue at Andrews' direction constitutes actionable negligence. We hold that Ortiz presents no evidence or authority for any special relationship between Appellants (or Pustilnik, acting at their direction) and Ortiz that would give rise to a legal duty owed to the Appellee.

The evidence shows E.C. passed away on the same day she was admitted into the hospital. Article 49.25, § 6(1) of the Texas Code of Criminal Procedure therefore required that Andrews hold an inquest into E.C.'s death. Ortiz does not allege an autopsy was unnecessary; she instead challenges whether it was necessary to collect the quantity of tissue Appellants obtained from the procedure.[10]

---

[10] For example, Pustilnik opined, "I believe a reasonably prudent forensic pathologist would not have ordered the retention of the entire cervical spinal column, the entire spinal cord, the heart, and both in [E.C.]'s case or a similar case. I believe it was not forensically required or appropriate. It is completely outside the normal practice of forensic pathology and outside the duties of the Lubbock County Medical Examiner Office."

Ortiz only discusses evidence that she suffered mental anguish damages.[11] The Supreme Court of Texas has held that before a plaintiff can recover mental anguish damages for breach of a legal duty involving handling of a corpse, there must exist a special relationship with the defendant. *Nelson*, 540 S.W.3d at 547 ("Texas common law requires a special relationship, though not necessarily a contractual one . . . ."). Special relationships have been found, for example, in prior contractual relationships between the parties. *See Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904, 906 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). Such relationships may also flow from a right held by the next of kin to direct the disposition of the deceased's remains, combined with the statutory right to make the arrangements for disposition of the decedent's remains. *See Nelson v. SCI Tex. Funeral Servs.*, 484 S.W.3d 248, 256 (Tex. App.—Eastland 2016), *aff'd*, 540 S.W.3d at 548 (Tex. 2018). We have neither found nor been directed to any evidence or authority, however, for the proposition that a medical examiner possesses any special relationship with the next of kin or owes any related legal duty to limit the amount of tissue to be removed from the decedent.[12] There is no contractual relationship between Ortiz and Appellants. She likewise does not show how the particular circumstances of this autopsy prevented her from directing the disposition of E.C.'s remains or ability to make arrangements to do so. We accordingly hold that Ortiz failed to establish by clear and specific evidence that the autopsy-related removal of E.C.'s tissues constitute actionable negligence against Appellants. *See id.* § 27.005(b),(c).

---

[11] Ortiz states in her brief that she is also seeking damages for intentional conduct, but she does not distinguish her evidence from that which she claims to be negligent conduct.

[12] Ortiz, for example, states in conclusory form that there existed a special relationship that gave rise to "a duty to avoid negligent infliction of emotional distress." Ortiz never identifies the source of the relationship, however.

## Conclusion

We sustain Appellants' issue, in part, and hold that Ortiz's allegations of negligent removal of E.C.'s organs and tissue should be dismissed in accordance with the TCPA. We thus reverse the district court's order in part and render a take-nothing judgment as to Ortiz's allegations of negligent removal of organs and tissue. We overrule all of Appellants' remaining issues, affirm the order, and remand this case to the district court for further proceedings consistent with this opinion.

Lawrence M. Doss
Justice