

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00310-CV

_____

THE UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER,
Appellant

V.

CELINA GONZALEZ, JOSE GONZALEZ AGUILAR, AND EDNA GONZALEZ
AGUILAR, Appellees

---

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-332573-22

---

Before Kerr, Bassel, and Womack, JJ.
Opinion by Justice Kerr

## OPINION

> Death is unique. It is unlike aught else in its certainty and its incidents. A corpse in some respects is the strangest thing on earth. A man who but yesterday breathed and thought and walked among us has passed away. Something has gone. The body is left still and cold, and is all that is visible to mortal eye of the man we knew. Around it cling love and memory. Beyond it may reach hope. It must be laid away. And the law—that rule of action which touches all human things—must touch also this thing of death. It is not surprising that the law relating to this mystery of what death leaves behind cannot be precisely brought within the letter of all the rules regarding corn, lumber and pig iron. . . . In [developing rules and legal principles for dealing with remains,] the courts will not close their eyes to the customs and necessities of civilization in dealing with the dead and those sentiments connected with decently disposing of the remains of the departed which furnish one ground of difference between men and brutes.
>
> —*Louisville & N.R. Co. v. Wilson*, 51 S.E. 24, 25 (Ga. 1905)

### Introduction

Although this case has unsettling facts—not until an open-casket funeral service did a California family discover that their loved one's corpse was switched with that of a stranger and, worse, had already been harvested for organs and cremated in Texas—the legal issue before us is the prosaic one of sovereign immunity and whether facts have been or can be alleged showing waiver of that immunity.

Because we conclude that the deceased's family did not and cannot plead facts sufficient to show that the University of North Texas Health Science Center's actions fall within the Texas Tort Claims Act's immunity waiver for personal injury caused by a use or misuse of tangible personal property, we hold that the trial court erred by denying UNTHSC's Rule 91a motion to dismiss and will reverse and render judgment

2

accordingly. We do so not without great sympathy for the appellees, Celina Gonzalez, Jose Gonzalez Aguilar, and Edna Gonzalez Aguilar, who are the family of Jose Carlos Gonzalez.

## Background and Procedural History

Jose,[1] a long-haul trucker, fell ill while driving across Tarrant County, Texas, and died on March 20, 2020, at Baylor Scott & White Medical Center in Grapevine. The Tarrant County Medical Examiner's Office took possession of his body. Soon after, Jose's widow Celina arranged with a funeral home in Chula Vista, California, to bring her husband's body home for an open-casket service and burial. The California funeral home contracted with the Brown, Owens and Brumley funeral home in Fort Worth to pick up Jose's body from the medical examiner's office, embalm it, and have it shipped to California.

Brown, Owens and Brumley dutifully picked up a body, but the M.E.'s office released the wrong one: that of Jesse Gonzalez. Jesse's body was slated to go to the Willed Body Program at UNTHSC, and the M.E.'s office sent Jose's body, "thinking it was Jesse Gonzalez, to [UNTHSC], wherein it was subsequently harvested for organs and then cremated" by an outside entity, DMA Cremations, Inc.

---

[1]Because Jose Gonzalez's body was confused with that of a Jesse Gonzalez, in discussing the facts we will use both men's first names for clarity; we mean no disrespect. The facts recited are all taken from the plaintiffs' live pleading.

3

As arranged by Brown, Owens and Brumley, a corpse was transported in late March or early April to California by Accucare Mortuary Services, which presumably thought that it was taking Jose back to his family.[2] Later in April, at Jose's funeral service, his family first discovered that Jesse—a complete stranger—had been placed in the coffin for viewing.

Jose's family (the Gonzalezes, collectively) sued UNTHSC and others for negligence, gross negligence, DTPA violations, and negligent infliction of emotional distress. UNTHSC moved for dismissal under Rule 91a, arguing that its sovereign immunity had not been waived for the Gonzalezes' claims (and that Texas does not recognize the tort of negligent infliction of emotional distress in any event). *See* Tex. R. Civ. P. 91a; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109 (Tort Claims Act). The Gonzalezes responded that UNTHSC would be entitled to governmental immunity only if its employees had official immunity and that discovery was thus needed to identify the employees involved, to which UNTHSC replied that official immunity—an affirmative defense—was irrelevant here.[3] *Cf. Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994) ("If a plaintiff has a right of action against the government due to the state's waiver of sovereign immunity, this right is not affected by whether a government employee has official immunity."). Over a month and a half

---

[2]The Gonzalezes do not allege that any of the parties sued in connection with this awful mix-up knew that they were dealing with the wrong man's body.

[3]On appeal, official immunity is not an issue.

after UNTHSC filed its Rule 91a motion, and two days before a visiting judge conducted a hearing on it, the Gonzalezes filed a third amended petition.

Consistent with the presiding judge's earlier ruling on the medical examiner's earlier-filed plea to the jurisdiction, the visiting judge entered an order denying UNTHSC's motion to dismiss the Gonzalezes' negligence claims "at this time," determining that "Plaintiff[s] should be given the opportunity to conduct limited discovery and amend their petition as appropriate."[4] UNTHSC's motion was granted as to all other claims.

UNTHSC perfected this interlocutory appeal from the trial court's declining to dismiss the negligence claims against it. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). The Gonzalezes have not cross-appealed the trial court's dismissal of their non-negligence-related claims, so we need address only one issue, which UNTHSC frames as, "Do Plaintiffs' pleadings allege facts affirmatively demonstrating a waiver of [UNTHSC's] immunity from suit under subsection 101.021(2) of the Tort Claims Act for a negligent use or misuse of tangible personal property?"

---

[4]The order on the M.E.'s jurisdictional plea had dismissed the Gonzalezes' claims for gross negligence, DTPA violations, and negligent infliction of emotional distress but allowed limited discovery to proceed on the negligence claims: Because it was "possible that a waiver of immunity may apply" to the Gonzalezes' negligence claims, "the Court determines that Plaintiffs should be given the opportunity to conduct limited discovery and amend their petition and the Medical Examiner's Plea to the Jurisdiction should be denied at this time with regard to Plaintiffs' negligence claims." The visiting judge understandably followed the presiding judge's lead.

## Sovereign Immunity and the Tort Claims Act

Immunity from suit deprives a court of subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (op. on reh'g). To establish subject-matter jurisdiction, a plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). In suits against the government, plaintiffs bear the concomitant burden of establishing a waiver of sovereign immunity.[5] *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a court has subject-matter jurisdiction is a question of law, *Miranda*, 133 S.W.3d at 226, and we interpret immunity waivers narrowly because the legislature's intent to waive immunity must be clear and unambiguous, *Mission Consol. ISD v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).

The Tort Claims Act provides a limited immunity waiver under certain discrete scenarios. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, .022, .025. The only scenario relevant here, as the Gonzalezes note, is that an entity such as UNTHSC is liable for "personal injury . . . so caused by a . . . use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). Later in this opinion we will discuss what using tangible personal property means within this case's facts.

---

[5]The Gonzalezes agree that UNTHSC is a governmental unit.

## Rule 91a and Standard of Review

We review de novo a trial court's ruling on a plea to the jurisdiction, which is essentially what UNTHSC raised through its Rule 91a motion to dismiss. *See San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 621 (Tex. 2021) (treating river authority's Rule 91a motion as a jurisdictional plea); *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (noting that absence of subject-matter jurisdiction may be raised by different procedural vehicles); *Univ. of N. Tex. Health Sci. Ctr. v. Jimenez*, No. 02-16-00368-CV, 2017 WL 3298396, at *3 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.) (construing UNTHSC's motion to dismiss for lack of subject-matter jurisdiction as functional equivalent of plea to the jurisdiction).

A Rule 91a movant may seek dismissal of a cause of action on the ground that it has no basis in law or in fact.[6] *See* Tex. R. Civ. P. 91a.1. A cause of action has no legal basis if the allegations, taken as true together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *Id.* "Whether the dismissal standard is satisfied depends 'solely on the pleading of the cause of action.'" *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (quoting Tex. R. Civ. P. 91a.6). We review any type of Rule 91a ruling de novo. *Id.*

---

[6]A cause of action lacks a basis in fact if no "reasonable person could believe the facts pleaded." Tex. R. Civ. P. 91a.1. The factual-plausibility standard is not implicated here; UNTHSC's position is that no set of facts exists that would waive its immunity from suit.

When a Rule 91a motion challenges jurisdiction, we construe the pleadings liberally in the plaintiff's favor, looking to the pleader's intent and accepting the factual allegations as true, to determine whether the pleaded facts suffice to invoke a waiver of immunity. *Id.* at 724–25; *Edgefield Holdings, LLC v. Gilbert*, No. 02-17-00359-CV, 2018 WL 4495566, at *5 (Tex. App.—Fort Worth Sept. 20, 2018, no pet.) (mem. op.). But if a petition's allegations negate jurisdiction, the petition is incurably defective, and we must dismiss the case with prejudice without affording an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27.

### Analysis

**General legal principles involving corpses.** Several Texas cases have addressed the rights possessed by—and causes of action available to—those left behind to deal with their loved ones' remains, with the supreme court most recently opining on this subject in *SCI Texas Funeral Services, Inc. v. Nelson*, 540 S.W.3d 539 (Tex. 2018).

In that suit over a private funeral home's allegedly negligent cremation of the plaintiff's mother's remains, the supreme court discussed the unique legal status of deceased bodies. *Id.* at 545. "Though it has long been established under the common law that 'a dead body is not the subject of property,' we have recognized that next of kin generally have a right to possess the body and control the burial, a right we first called a quasi-property right more than 80 years ago." *Id.* at 545 (quoting *Evanston Ins.*

8

*Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012)). In *Evanston* itself, the

supreme court noted:

> Historically, the notion of a quasi-property right arose to facilitate recovery for the negligent mishandling of a dead body. If the plaintiff could show that his property right had been harmed, he would avoid the burden of proving that his emotional distress was accompanied by physical injury. . . . In reality, however, *the primary concern of the right is not the injury to the dead body itself*, but whether the improper actions caused emotional or physical pain or suffering to surviving family members. The injury is seldom pecuniary; rather, damages are grounded in the mental and physical injuries of survivors.

370 S.W.3d at 384 (emphasis added) (quoting *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d

877, 880 (Colo. 1994)). This reasoning led the *Evanston* court to conclude that "[t]he

common law . . . allows next of kin to sue for mental[-]anguish damages when acts are

performed on a decedent's body or tissues without the next of kin's consent in certain

circumstances." *Id.* at 385.[7]

---

[7]*See also Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011) (upholding mental-anguish finding in widow's favor after husband's body was disinterred and moved to another grave without permission); *Classen v. Benfer*, 144 S.W.2d 633, 635 (Tex. App.—San Antonio 1940, writ dism'd judgm't cor.) (upholding damages award, including for mental anguish, where corpse was moved from its resting place without family's consent and was later misplaced); Restatement (Second) of Torts § 868 & cmt. a (Am. Law Inst. 1979) (discussing cause of action for interfering with dead body and commenting that while the "technical basis of the cause of action is the interference with the exclusive right of control of the body, which frequently has been called by the courts a 'property' or a 'quasi-property' right," that basis "does not, however, fit very well into the category of property, since the body ordinarily cannot be sold or transferred, has no utility[,] and can be used only for the one purpose of interment or cremation").

From the caselaw, we see that the law has a proper and understandable desire to compensate for the natural anguish that loved ones experience when a corpse is desecrated, mishandled, or lost. We see also that this compensation is available not because of any property right in the corpse or for injury to the dead body itself, but rather because of a corpse's sui generis categorization—a status one might view, in a sense, as existing between heaven and earth.

But in light of sovereign immunity, asserting such claims against a governmental entity is altogether different, beginning with pleading requirements.

**Pleading the use of tangible personal property as waiving immunity under the Tort Claims Act.** Unless Jose's family has alleged facts showing that UNTHSC harmed them by negligently using tangible personal property, sovereign immunity will dictate this case's outcome. Although the trial court denied UNTHSC's Rule 91a motion on the negligence claim and allowed limited discovery so that the Gonzalezes could seek evidence and amend their petition as needed, at oral argument they disclaimed the need for any discovery and asserted that their current petition suffices—with the possible exception of perhaps needing to beef up their proximate-cause allegations—to establish an immunity waiver.

But the third amended petition does not allege the negligent use of tangible personal property; it does not mention that UNTHSC is a governmental entity, that UNTHSC misused specific tangible personal property in some way, or even that their claims implicate the Tort Claims Act. *Cf., e.g., City of Raymondville v. Elizondo*, No. 13-

10

21-00375-CV, 2022 WL 1669438, at *2 (Tex. App.—Corpus Christi–Edinburg May 26, 2022, no pet.) (mem. op.) (noting that plaintiffs' petition alleged that city's immunity was waived by the "use or misuse of tangible property, namely surveying equipment probes, shovels[,] and other equipment utilized to lay[ ]out burial spaces, locate available spaces[,] and also to determine that depth of spaces and bury remains"); *Noah v. Univ. of Tex. Med. Branch at Galveston*, 176 S.W.3d 350, 355 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (reciting that plaintiffs' petition "alleged that their injuries had been caused by either a condition of, or by UTMB's use or misuse of, 'tangible personal property'—specifically, the remains of the plaintiffs' relatives [that had been commingled with others and thus unable to be returned to plaintiffs] and the tools and equipment used in the cremation process" (footnote omitted)).

In their only references to UNTHSC, the Gonzalezes pleaded that

- "DEFENDANT, THE UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER, is a corporation doing business in the State of Texas."

- "The Court has continuing jurisdiction over Defendants[8] because Defendants are Texas residents. The Court has jurisdiction over the subject matter because the damages are within the statutory jurisdictional limits of the Court."

- "The body of Jesse Gonzalez was supposed to go to the Willed Body Program at the University of North Texas [Health] Science Center. Instead, the Tarrant County Medical Examiner's Office sent the body of Jose Carlos Gonzalez,

[8]The defendants at the time of this amendment were the Tarrant County Medical Examiner; Brown, Owens and Brumley; Accucare; UNTHSC; DMA Cremations; and Nizam Peerwani, M.D., P.A.

thinking it was Jesse Gonzalez, to the Willed Body Program, wherein it was subsequently harvested for organs and then cremated."

- "Through the process of exchanging written discovery with the other Defendants, Plaintiffs have learned that the body of [Jose] was cremated by DMA Cremations, LLC and not the Willed Body Program at [UNTHSC], as originally believed."

The entirety of the global negligence claim against UNTHSC and the other defendants reads:

1. NEGLIGENCE AGAINST DEFENDANTS

Defendants had a duty to exercise ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. Ordinary care means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Defendants failed to use ordinary care in handling the remains of the Decedent, Jose Carlos Gonzalez. This failure proximately caused damages to the Plaintiffs, including mental anguish.

Even after being put on notice of the jurisdictional issue through UNTHSC's Rule 91a motion and then amending their pleadings, the Gonzalezes' latest petition falls far short of alleging facts showing an immunity waiver. "If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004); *see also Harris*

12

*Cnty. Appraisal Dist. v. Braun*, 625 S.W.3d 622, 636 n.21 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Sykes* in dismissing plaintiff's claims without allowing opportunity to replead and noting that where plaintiff amends petition after governmental entity files jurisdictional plea, plaintiff isn't entitled to yet another opportunity to replead). Particularly because the Gonzalezes have disavowed the need for any jurisdiction-related discovery, we thus could reverse and render on this basis alone.

But for thoroughness, we will examine the foundational question of whether the Gonzalezes *could* allege facts to get around UNTHSC's immunity. In answering that question in the negative—meaning that another chance to amend would be futile—we are persuaded by UNTHSC's position that the Gonzalezes' real complaint is that intangible identifying information, not tangible personal property, was used or misused and was the source of their harm.[9]

---

[9]The Gonzalezes take issue with UNTHSC's "gravamen" argument, accusing it of an "attempted rewrite" of their allegations "in order to manufacture immunity." But the law instructs courts to look beyond how a party characterizes its cause of action to find its "true nature." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017) ("The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties."); *see also CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016) (instructing that in evaluating the type of claim, "we examine the underlying nature and gravamen of the claim, rather than the way it is pleaded"); *Univ. of Tex. Health Sci. Ctr. at Hous. v. Dickerson*, No. 14-13-00232-CV, 2014 WL 708521, at *6 (Tex. App.—Houston [14th Dist.] Feb. 20, 2014, no pet.) (mem. op.) ("In determining whether sovereign immunity has been waived, courts look to the real substance of a plaintiff's cause of action, not the plaintiff's characterization of her claims.").

The Gonzalezes attempt to finesse this problem by arguing that they were harmed by UNTHSC's using organ-harvesting tools (tangible personal property) or by UNTHSC's misusing Jose's body itself (tangible personal property) in harvesting his organs, or both. But the Gonzalezes do not suggest that the *process* of harvesting Jose's organs was done negligently. They do not claim, for example, that UNTHSC negligently used a hacksaw instead of a scalpel or that it negligently sliced a particular organ in half.[10] Indeed, at oral argument, the Gonzalezes explicitly disavowed a claim of negligently performed organ harvesting or dissection and proposed that UNTHSC's negligence consisted, rather, of doing anything to Jose's corpse at all.

**The gravamen of the Gonzalezes' claim is that information concerning Jose's and Jesse's identifications was mishandled.** So how did UNTHSC end up with Jose's body in the first place? The answer is clear: his body was mistaken for Jesse's at some point—it was misidentified because of faulty information.

And Texas law is equally clear that information, even when recorded on something tangible such as paper, is intangible and thus does not fall under the Tort Claims Act's immunity waiver. *See, e.g., Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 176, 179 (Tex. 1994) (holding that information in medical records is not tangible personal property within the meaning of the Tort Claims Act; "the fact that information is recorded in writing does not render the information tangible

---

[10]With these examples, we don't mean to suggest that such claims could waive immunity.

14

property"); *Zawislak v. Tex. Med. Bd.*, No. 03-17-00523-CV, 2019 WL 321993, at *2 (Tex. App.—Austin Jan. 25, 2019, pet. denied) (mem. op.) (affirming sovereign-immunity bar where a doctor, who was publicly reprimanded by governing state entity, sued medical board for negligently using expert report and deposition in administrative proceeding and noting that "[a]lthough the paper (or other format) on which [the expert's] report and deposition testimony was recorded is tangible, [the doctor] does not allege that he was injured by the paper" but rather by information in the paper); *Seamans v. Harris Cnty. Hosp. Dist.*, 934 S.W.2d 393, 395 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding no immunity waiver where information about body's donation was not timely relayed, making the anatomical gift worthless, because use of county hospital's gurney, morgue refrigeration units, transport vehicle, etc., was "merely incidental": "Seamans' body would have been used for its intended purpose if Ben Taub had successfully transmitted *information* regarding the donation to the medical school").

Courts have applied this information-is-intangible principle in circumstances closely resembling this case, in particular *City of Raymondville*, *supra*, and *Dominguez v. Bexar County Medical Examiner's Office*, No. 10-06-00109-CV, 2007 WL 613792 (Tex. App.—Waco Feb. 28, 2007, no pet.) (mem. op.). Each case demonstrates the insurmountable immunity bar that the Gonzalezes face here.

In *City of Raymondville*, a city employee gave a funeral home inaccurate plot measurements; as a result, the deceased was buried in the wrong location and had to

15

be disinterred and moved to the correct cemetery plot. 2022 WL 1669438, at *1, *5. The deceased's family members sued and alleged that immunity was waived by the use of tangible personal property in the form of the equipment used to dig the grave and move the remains. *Id.* at *2. The city challenged the trial court's jurisdiction by arguing, as one of two bases, that the use or misuse of information—the wrong measurements—does not equate to use or misuse of tangible property. *Id.*

The appellate court reversed the trial court's denial of the City's combined plea to the jurisdiction and summary-judgment motion, *id.* at *3, *6, and rendered a judgment of dismissal, *id.* at *6. Looking to the gravamen of the family's claims, the court held that "the use or misuse of information was the cause of appellees' injuries, not the use or misuse of tangible personal property." *Id.* at *5. That is, if the city employee had not passed along incorrect information, "Decedent's remains would not have been interred into the wrong plot and likewise would not have needed to be moved." *Id.* The "substance" of the family's complaints involved the "misuse and transmission of information," and "the information did not become tangible personal property by [the city's] recording the information in writing." *Id.*

*Dominguez* similarly involved a family's attempt to connect the use of tangible personal property to their mental anguish, which in that case occurred when their loved one's burned remains were incorrectly identified.[11] 2007 WL 613792, at *1. The

---

[11]Although the opinion is light on facts, it appears that the deceased in question, Jermaine Ramirez, and another person died together in a fire. *Dominguez,*

16

plaintiffs contended that tangible personal property in the form of charred driver's licenses and the burned corpses themselves were "misused." *Id.* at *2, *3. Affirming the trial court's grant of the Bexar County Medical Examiner's jurisdictional plea, the appellate court agreed with the county that "its actions constituted the use of the information on the driver's licenses, not the use of the driver's-license certificates as tangible personal property," citing cases holding that information is an abstract concept that lacks corporeal, physical, or palpable qualities. *Id.* at *2 (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001), and *York*, 871 S.W.2d at 179).

As for the corpses themselves, Dominguez contended—as do the Gonzalezes here—that "human remains are property." *Id.* at *3 (quoting Dominguez's appellate brief). But the non-immunity cases on which Dominguez relied, although recognizing that heirs have the right to select how remains are to be laid to rest, "do not stand for the proposition that the corpse constitutes personal property concerning which a party may sue the State for money damages." *Id.*

The Gonzalezes have not attempted to distinguish *City of Raymondville* or *Dominguez*, whose reasoning we find sound. The gravamen of the Gonzalezes' claim is a use or misuse of information, not of tangible personal property, and that is a jurisdictional chasm that cannot be bridged through repleading. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (holding that appellate court erred by

2007 WL 613792, at *2 ("Dominguez argues that the County used the decedents' driver's licenses and corpses as tangible personal property.").

17

remanding for repleading because "Koseoglu's pleading defects cannot be cured, and he has made no suggestion as to how to cure the jurisdictional defect"). The fact is that Jose's and Jesse's bodies would not have been confused but for the M.E.'s "thinking," as the Gonzalezes pleaded, that it was sending Jesse's body to UNTHSC. That misidentification, not UNTHSC's organ harvesting, caused the Gonzalezes' mental anguish.[12] We must construe sovereign-immunity waivers narrowly, and these facts simply do not fall within the Tort Claims Act's waiver.

## Conclusion

Having sustained UNTHSC's sole issue, we reverse the trial court's denial of UNTHSC's Rule 91a motion on the Gonzalezes' negligence claims and render judgment that those claims be dismissed with prejudice.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: April 13, 2023

---

[12]That is true even if UNTHSC failed to confirm whose body it had received, a theoretical duty that the Gonzalezes have not raised.