

# NUMBER 13-24-00263-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS DEPARTMENT OF
TRANSPORTATION,                                                     Appellant,

v.

CHRISTOPHER GOVER
INDIVIDUALLY AND AS NEXT
FRIEND OF C.G., I.G., S.G., AND
J.G., MINOR CHILDREN,                                               Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 4
## OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Peña**

Appellee Christopher Gover individually and as next friend of C.G., I.G., S.G., and

J.G., his four minor children, initiated the underlying lawsuit against appellant the Texas

Department of Transportation (TxDOT) after he sustained injuries in the crash of a TxDOT-operated ferry. A jury found that the captain was not reacting to an emergency and that TxDOT was negligent, and it awarded damages to Gover and his children. By three issues, TxDOT argues: (1) sovereign immunity was not waived under the Texas Tort Claims Act's (TTCA) emergency exception; (2) Gover failed to present expert evidence establishing that TxDOT breached the duty owed by a reasonably prudent ship captain in responding to an emergency situation; and (3) Gover failed to present evidence supporting the jury's award of pain and mental anguish damages for the children. We affirm in part and reverse in part.

## I. BACKGROUND

TxDOT's Port Aransas Ferry Operations (PAFO) provides transport for passengers and vehicles across the Corpus Christi Ship Channel between Aransas Pass and Port Aransas. Depending on the time of day and traffic volume, PAFO can operate up to eight vessels. PAFO generally has a ferry available for passengers every ten minutes, with a trip across the channel generally taking about five to seven minutes. At the ferry landing, there are several slips for the ferries to dock. Individual "clusters" are placed in the water to separate the approaches for each of the slips. The clusters closest to the ramp, called "landing guide clusters," are comprised of rubber and plastic material intended to assist with landing the ferry.

On the evening of June 16, 2018, Gover and his children were returning home to Rockport after a day trip to Corpus Christi and Port Aransas. Rather than drive through Corpus Christi to return home, Gover decided to use PAFO and loaded his truck onto the Charles Heald ferry (the Heald). The Heald is an approximately 159-foot vessel with

2

capacity to transport twenty-eight cars and is equipped with two engines. Either engine can be reversed to slow the vessel, though the front engine is the primary braking mechanism. A boat crew for a twenty-eight-car ferry like the Heald consists of one captain and three deckhands. That night, Emilio Hernandez captained the Heald while Sam Newcomer, James Norton, and Lawrence Carson served as deckhands.

During the trip across, Gover and his child I.G. exited his parked truck to watch the waves while the three other children remained in the vehicle. As the Heald approached the landing, approximately forty-five seconds before the end of the trip, the front engine abruptly lost power. With only one engine available to brake the vessel and the landing in close proximity, Hernandez maneuvered the vessel to hit the landing guide cluster in an effort to slow down. Norton testified that this action bought the deckhands about six to seven seconds to warn passengers to move away from the front of the boat; however, Gover testified he never heard any warning from the crew. After the Heald hit the cluster, Gover grabbed I.G. and moved away from the front of the boat to the side of his truck where his other children remained inside. The landing guide cluster did not slow down the vessel, so Hernandez made a last resort effort to bump into the landing's fender system, but this was also unsuccessful. The Heald subsequently made impact with the landing ramp which crushed the barrier gate system and damaged the Heald and Gover's truck. Gover checked on his children in the truck, who were "shocked" but appeared to be "okay." While Gover did not immediately seek medical attention, he experienced soreness and pain in his neck, back, and knees in the following days. According to Elliot Clemence, M.D., the accident caused meniscus tears in both of Gover's knees.

On September 12, 2019, Gover filed suit in his individual capacity and on behalf of

3

his four children alleging that TxDOT was negligent in the operation of the Heald.[1] Gover asserted that governmental immunity was waived under section 101.021 of the TTCA because his and his children's injuries were caused by the negligence of Hernandez who was within the scope of his employment with TxDOT while operating the Heald and who would be personally liable to them under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A)–(B). Gover sought damages for past and future physical pain and mental anguish, past and future medical expenses, and personal property damage on behalf of himself and his children. In its second amended answer, TxDOT generally denied all allegations and asserted immunity from suit and liability.[2]

The case proceeded to a jury trial on March 4, 2024. Testifying witnesses at trial included Norton, Gover, C.G., and Clemence, as well as designated experts Timothy Lewis, Charles Hafer, and Felix Trevino. The jury found that Hernandez was not reacting

---

[1] Gover alleged TxDOT was negligent in one or more of the following respects:

(a)  in failing to keep a proper lookout or such lookout, which a person of ordinary prudence would have maintained under same or similar circumstances;

(b)  in failing to timely apply the brakes of the vehicle in order to avoid the collision in question;

(c)  in failing to turn the vehicle in an effort to avoid the collision in question;

(d)  in failing to blow the horn warning of imminent danger; . . .

(e)  in operating the [TxDOT] ferry boat in a willful, wanton, reckless and negligent manner so as to endanger [Gover and his children] in violation of [section] 31.094 of the [Texas Parks & Wildlife Code]; and

(f)  in operating the [TxDOT] ferry boat at a rate of speed greater than is reasonable and prudent, having due regard for the conditions and hazards, actual and potential, then existing, in violation of [sections] 31.095 and 31.096 of the [Texas Parks & Wildlife Code].

[2] The record shows that TxDOT filed a plea to the jurisdiction on November 11, 2021. A notice of hearing filed on December 3, 2021, indicates that a hearing on the motion was set for December 15, 2021. The record does not indicate whether the hearing was held or if the trial court ruled on the motion.

to an emergency situation and that TxDOT's negligence proximately caused Gover's and his children's injuries. The jury awarded Gover a total of $1,655,467.54 in damages.[3] Gover moved to enter judgment in the amount of $250,000 (representing the statutory cap on liability under the TTCA) as to himself and $5,000 plus pre-judgment interest as to each of his four children. TxDOT in turn filed a motion for judgment notwithstanding the verdict arguing that Gover: (1) failed to present evidence that the incident did not occur in response to an emergency situation; (2) failed to present evidence establishing the standard of care and breach; and (3) failed to present evidence to support pain and mental anguish damages for the children. Gover filed a response, and after a hearing on both motions, the trial court denied TxDOT's motion and entered judgment in favor of Gover. This appeal followed.

## II.    EMERGENCY EXCEPTION

In its first issue, TxDOT challenges the trial court's subject-matter jurisdiction over Gover's negligence claim. According to TxDOT, the trial court lacked subject-matter jurisdiction because the TTCA's emergency exception applies to Hernandez's operation of the ferry boat. *See id.* § 101.055(2). TxDOT asserts that the evidence conclusively demonstrates an emergency situation and that Gover failed to present controverting evidence.

### A.    Standard of Review

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004);

---

[3] The jury awarded Gover $250,000 for past physical pain and mental anguish; $500,000 for future physical pain and mental anguish; $10,000 for past disfigurement; $400,000 for past physical impairment; $400,000 for future physical impairment; $52,451.27 for past medical expenses; and $33,016.27 for future medical expenses. The jury awarded $5,000 to each child for past physical pain and mental anguish.

5

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is generally a question of law which we review de novo, *see Miranda*, 133 S.W.3d at 226, and can be raised at any time, *see Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012). "But when, as here, a jurisdictional challenge under the TTCA is raised after a trial on the merits, the standard of review stated in *Miranda* does not apply." *City of Houston v. Torres*, No. 01-23-00905-CV, 2025 WL 3768328, at *2 (Tex. App.—Houston [1st Dist.] Dec. 31, 2025, no pet.) (mem. op.) (first citing *City of Houston v. Sw. Bell Tel. Co.*, No. 01-16-00734-CV, 2017 WL 3262131, at *2–3 (Tex. App.—Houston [1st. Dist.] Aug. 1, 2017, no pet.) (mem. op.); then citing *Prairie View A&M Univ. v. Brooks*, 180 S.W.3d 694, 704 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). Instead, when the jury's findings bear on a determination of the trial court's subject-matter jurisdiction, the proper standard of review is whether the evidence is legally and factually sufficient to support the factfinder's determination of immunity.[4] *Brooks*, 180 S.W.3d at 704; *see Torres*, 2025 WL 3768328, at *2; *Sw. Bell*, 2017 WL 3262131, at *2.

"In the absence of an objection to a definition, when reviewing the legal . . . sufficiency of the evidence, we measure the evidence against the charge given, applying the definitions given." *Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 629 (Tex. App.—Fort Worth 2011, pet. denied) (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002)); *State Off. of Risk Mgmt. v. Pena*, 548 S.W.3d 84, 90 n.2 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) ("In assessing the legal sufficiency

---

[4] TxDOT's motion for judgment notwithstanding the verdict preserved its legal sufficiency challenge. *See First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 337 (Tex. App.—Dallas 2011, pet. denied). However, TxDOT did not file a motion for new trial and therefore did not preserve any factual sufficiency issue. *See* TEX. R. CIV. P. 324(b)(2). Accordingly, we construe TxDOT's first issue as a challenge to the legal sufficiency of the evidence only, and we do not address factual sufficiency because it is not properly before us.

of the evidence supporting the jury's verdict where the jury charge was submitted without objection, we look to the jury charge." (citing *Seger v. Yorkshire Ins.*, 503 S.W.3d 388, 407 (Tex. 2016))). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally insufficient if there is a complete absence of evidence of a vital fact, the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. When reviewing the legal sufficiency of evidence, we view the evidence in a light most favorable to the verdict and indulge every reasonable inference to support it. *Id.* at 822. We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827.

**B.    Applicable Law**

"Sovereign immunity protects the State of Texas and its political subdivisions from liability for negligence." *Tex. Dep't of Transp. v. Christ*, 644 S.W.3d 202, 207 (Tex. App.—Corpus Christi–Edinburg 2021), *aff'd*, 664 S.W.3d 82 (Tex. 2023) (citing *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994)). "However, immunity may be waived by constitutional or statutory provisions." *Id.* The TTCA creates limited waivers of sovereign immunity. TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109; *Miranda*, 133 S.W.3d at 224. The TTCA also includes a subchapter entitled "Exceptions and Exclusions," which lists circumstances in which the waiver provisions do not apply. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 671–72 (Tex. 2006). Section 101.055(2), commonly called the "emergency exception," states that the TTCA's waiver

of immunity does not apply to a claim arising

> from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

TEX. CIV. PRAC. & REM. CODE § 101.055(2). The TTCA does not define the terms "emergency call" or "emergency situation," but the Texas Supreme Court has interpreted the terms broadly. *See Hartman*, 201 S.W.3d at 672–73 (concluding that a city's placement of barricades after flooding constituted "reacting to an emergency situation" under section 101.055(2)).

Once the government unit raises the emergency exception and presents some evidence to support the application of the "emergency exception," the plaintiff must respond with some evidence that the government employee was not reacting to an emergency situation. *See Hartman*, 201 S.W.3d at 672; *City of San Antonio v. Smith*, 562 S.W.3d 75, 83 (Tex. App.—San Antonio 2018, pet. denied); *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also City of Houston v. Rodriguez*, 704 S.W.3d 462, 469 n.26 (Tex. 2024) ("[A] plaintiff would bear the burden to negate the application of the [TTCA]'s emergency exception."). To satisfy this burden, the plaintiff is required to present evidence of one of the following: "(1) the entity was not responding to an emergency call or reacting to an emergency situation; (2) the entity was not in compliance with the laws and ordinances applicable to the emergency action; or (3) the entity's actions were taken with conscious indifference or reckless disregard for the safety of others." *Smith*, 562 S.W.3d at 83; *see Hartman*, 201 S.W.3d at 672; *Quested*, 440 S.W.3d at 284; *Tex. Dep't of Pub. Safety v. Little*, 259

S.W.3d 236, 238–39 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Whether an employee is "reacting to an emergency situation" is a question of fact. *See Jefferson County v. Hadnot*, 699 S.W.3d 787, 798 (Tex. App.—Beaumont 2024, no pet) (concluding there was sufficient evidence to raise a question of fact regarding whether employee was reacting to an emergency); *City of Houston v. Arellano*, 654 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (same).

## C. Analysis

To assess the legal sufficiency of the evidence supporting the jury's verdict, we measure the evidence against the jury charge and the definitions therein. *Chesser*, 356 S.W.3d at 629 (holding that evidence was legally sufficient to establish a party's negligence proximately caused injury after weighing evidence against the definitions in the jury charge); *see also Mullins v. McWhirter*, 724 S.W.3d 571, 581 (Tex. App.—Eastland 2025, pet. denied) ("When . . . the parties d[o] not object at trial to the substance of the law set forth in the charge, we review the sufficiency of the evidence in light of the legal standards contained in the unobjected-to charge."). At the charge conference, the trial court accepted TxDOT's argument that the jury should decide whether Hernandez was reacting to an emergency situation and overruled Gover's objection to the inclusion of the instruction in the jury charge. The jury charge gave the following definition of "emergency" which TxDOT approved of:

> "EMERGENCY" means that if a person is confronted by an "emergency" *arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation*, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

9

(Emphasis added). The jury was then asked whether "the actions being undertaken by [TxDOT] employee EMILIO HERNANDEZ taken in reaction to an emergency situation?" and it answered, "No."

TxDOT argues that the evidence at trial clearly established that the failure of the front engine created an emergency situation. Lewis, a ferry deck supervisor with PAFO at the time of the crash who had previously captained the Heald, testified that "[b]ecause of the short period of time [Hernandez] had from when he lost that engine . . . was a really bad time. I mean, it was definitely an emergency situation." Lewis affirmed that "it was not necessarily the engine failure but the timing of the engine failure" which led him to classify the situation as an emergency. This testimony aligns with an incident report completed by Lewis which stated that the "incident was not preventable due to the loss of forward engine. This forward engine is used to stop the vessel when making a landing to dock. The timing of the loss of engine is the reason for [the] incident." Similarly, Norton testified that it was an emergency situation because the forward engine failed so close to the shore.

However, under a legal sufficiency review, "[j]urors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *Wilson*, 168 S.W.3d at 819. The emergency definition submitted to the jury included the word "unexpectedly" and there was evidence to support a finding the engine failure was not "unexpected." The jury heard from Hafer, a captain and safety coordinator for TxDOT at the time of the accident, who testified that he had experience captaining ferries and exclusively captained the Heald during its first year in commission.

10

Hafer testified that he had many instances in which a ferry's engine turned off—including when the ferry was approaching the landing—without incident. Hafer explained an engine shutting off can occur when approaching the landing because when the forward engine is put into reverse to slow down, a current could exert significant load on the engine. Hafer further explained that the potential loss of an engine is "always brought up" during training and is a scenario in which the captains are taught how to react to in order to prevent collisions. Lewis also testified that there is monthly training for engine loss which consists of simulating engine loss within a quarter of the way into the slip. The jury could have credited and inferred from this testimony that the engine loss on June 18 was not an "unexpected" situation and therefore did not give rise to an "emergency" as defined in the jury charge. Similarly, the jury was entitled to disbelieve Lewis and Norton's testimony to the contrary. *See id.*

Further, the emergency definition also included the phrase "without time for deliberation." Norton testified that the engine loss occurred on the Heald's final approach to the slip, approximately during the last forty-five seconds of the voyage. The jury also heard testimony and saw Hernandez's incident report which established that, within those forty-five seconds, Hernandez gave a "kill sign" to the deckhands indicating engine loss, maneuvered the vessel to bump into the landing guide clusters, and then attempted to bump into the landing's fender system. The jury could have reasonably inferred from this evidence—which indicated that Hernandez had time to choose among different courses of action to address the situation—that Hernandez was not "without time for deliberation." We acknowledge that in another section 101.055(2) case, the Texas Supreme Court explained that a government unit having six hours to place barricades in response to

11

flooding was not evidence it was no longer reacting to an emergency situation. *Hartman*, 201 S.W.3d at 673 (holding "an emergency situation existed as a matter of law"). However, the procedural posture of that case makes it distinguishable. In *Hartman*, the government unit appealed the trial court's pre-trial denial of its plea to the jurisdiction. The Texas Supreme Court, alluding to its obligation to strictly construe the TTCA's waivers of immunity, applied the broad "plain or common meaning" of "emergency". *See id.* ("[B]ecause the [TTCA] creates governmental liability where it would not otherwise exists, we cannot construe section 101.055(2) to exclude emergencies the Legislature might have intended to include."); *see also Janvey v. GMAG, L.L.C.*, 592 S.W.3d 125, 129 (Tex. 2019) ("When a statute does not define a word or phrase, we look to its plain or common meaning."). Here, TxDOT challenges the trial court's subject matter jurisdiction following a jury verdict based on the instruction TxDOT argued for inclusion. In our legal sufficiency review, we are limited to the jury charge in evaluating evidence of an emergency or lack thereof. *See Seger*, 503 S.W.3d at 407 ("It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence." (citation modified)). Because we apply the jury charge's unique and specific definition of "emergency"—and that TxDOT requested—rather than "its plain or common meaning," *Hartman* is not controlling.

Viewing the evidence in a light most favorable to the verdict and indulging every reasonable inference to support it, we conclude that the evidence was legally sufficient to support the jury's verdict that Hernandez was not responding to an emergency per the jury charge's definition. *See Wilson*, 168 S.W.3d at 810, 822; *see also Meija v. City of San Antonio*, 759 S.W.2d 198, 200 (Tex. App.—San Antonio 1988, no writ) ("At trial, if the

evidence raised the issue, it would be for the jury to determine whether the elements of [section] 101.055, such as the existence of an emergency . . . were satisfied."). We overrule TxDOT's first issue.[5]

### III. BREACH

In its second issue, TxDOT asserts that Gover failed to present expert evidence establishing that TxDOT breached the duty owed by a reasonable prudent ship captain in responding to an emergency situation. We construe this as a challenge to the legal sufficiency of the evidence supporting the breach element of Gover's claims.

### A. Applicable Law

Whether expert testimony is required is a question of law we review de novo. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004). In de novo review, we exercise our own discretion and accord no deference to the trial court's decision. *Vaughn v. Vaughan*, 710 S.W.3d 412, 418 (Tex. App.—Eastland 2025, pet. denied) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). "Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman." *FFE Transp. Servs.*, 154 S.W.3d at 90 (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)). In making this determination, Texas courts consider whether the conduct at issue involves the use of techniques and specialized equipment unfamiliar to the ordinary person. *Id.* at 91 (citing *Hager v. Romines*, 913 S.W.2d 733, 735 (Tex. App.—Fort Worth 1995, no writ)).

---

[5] Because we conclude that there was legally sufficient evidence to support the jury's finding that Hernandez was not reacting to an emergency, we do not address TxDOT's arguments about insufficient evidence concerning conscious indifference or reckless disregard. *See* TEX. R. APP. P 47.1.

**B. Analysis**

TxDOT argues that a ferry boat is a piece of specialized equipment and operating one involves specialized techniques. However, among the negligent acts alleged in Gover's original petition was that Hernandez "fail[ed] to blow the horn warning of imminent danger." A negligent act based on Hernandez's alleged failure to use the ferry's horn to alert passengers of an imminent collision and give them time to protect themselves does not fall beyond a lay person's common understanding. *See VIA Metro. Transit v. Meck*, 587 S.W.3d 14, 24–25 (Tex. App.—San Antonio 2018, pet. denied) (holding expert testimony was not required for negligence claim based on a bus driver driving at high speed with doors open); *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 893–94 (Tex. App.—Texarkana 2004, pet. denied) (holding expert testimony was not required to establish causation in a negligence involving a low-speed collision between two vehicles); *Dallas Ry. & Terminal Co. v. Bailey*, 250 S.W.2d 379, 382 (Tex. 1952) (holding that the matter of safely stopping bus on highway covered in ice did not lie within field properly subject to expert opinion testimony). It is commonly understood, regardless of the vehicle being operated, that failure to utilize a warning device when a collision is imminent could result in harm to passengers. Thus, we conclude expert testimony was not required to establish Hernandez's negligence in failing to use the horn. *See Meck*, 587 S.W.3d at 24–25.

Even assuming expert testimony was necessary to establish some of Gover's negligence theories, we hold that Gover presented probative expert testimony to establish the standard of care and breach thereof. Lewis, Hafer, and Trevino were all designated as experts by Gover. TxDOT made no objections to their designation, to their

qualifications, or to their testimony at trial. Lewis agreed that PAFO captains are trained on loss of an engine and that "they have an obligation to use all their training and equipment correctly to make sure they ke[ep passengers] safe on the vessel." Trevino also agreed that "if the captain knows that there is going to be an impact, it would be the captain's job as the driver to make sure and alert their crew" so that the crew "can warn passengers." Hafer testified that if a collision is imminent, "I would notify the deckhands. If I had no time, I would sound the horn." The substance of the experts' testimony established that a trained and experienced captain should sound the horn to alert and protect passengers when a collision is imminent. *See Panhandle Steel Erectors, Inc. v. Cantu*, No. 05-17-01495-CV, 2019 WL 3214147, at *4 (Tex. App.—Dallas July 17, 2019, pet. denied) ("[A]n expert need not use 'magic words,' such as 'standard of care'; the substance and context of the expert's testimony will be determinative.") Gover and his child C.G. both testified that they never heard a horn to alert them of an imminent collision. While Carson, one of the deckhands, stated in his accident report that he heard the horn blow,[6] the jury could have discredited his testimony and relied on the testimony of Gover and C.G. *See Wilson*, 168 S.W.3d at 819.

Viewing the evidence in a light most favorable to the verdict and indulging every reasonable inference to support it, we conclude that the evidence was legally sufficient to support the jury's verdict concerning breach of the applicable standard of care.[7] *See*

---

[6] In a statement of fact completed after the accident, Hernandez wrote, "I tried to get my deckhand's attention on the radio to move passengers away from the gate, but there was too much radio traffic, used the horn." Lewis agreed that it was unclear at exactly what point Hernandez claims to have used the horn.

[7] We address only one of Gover's theories of negligence by TxDOT because "we are required to affirm the judgment on the jury's verdict on this issue if the evidence is legally sufficient concerning any one of these theories." *Chesser v. LifeCare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 634 n.24 (Tex. App.—Fort Worth 2011, pet. denied); *see* TEX. R. APP. P. 47.1; *see also Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429,

*Wilson*, 168 S.W.3d at 810, 822.

## IV. DAMAGES

In its third and final issue, TxDOT asserts that there is no evidence to support an award of past physical pain and mental anguish damages to Gover's children.

## A. Standard of Review & Applicable Law

"We apply the same no-evidence standard of review to legal sufficiency challenges to the evidence supporting a jury's damage award as we do to a legal sufficiency challenge on a jury's liability findings." *Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 549 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g); *see also supra* section II.A.

When a person suffers personal injuries, the damages fall within two broad categories: economic and non-economic damages. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003). Texas recognizes the following categories of non-economic damages: suffering, pain, mental anguish, physical impairment, and disfigurement. *Id.* at 769. Past pain can be proven by testimony or evidence (both direct and circumstantial) about the pain. *See, e.g.*, *Hospadales v. McCoy*, 513 S.W.3d 724, 742 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (testimony by pain management doctor about extent of injuries); *Figueroa v. Davis*, 318 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (circumstantial evidence is sufficient to establish physical pain).

Absent physical injury, "whether negligently inflicted mental anguish damages are recoverable depends both on 'the nature of the duty breached' and on the sufficiency of the plaintiff's evidence." *SCI Tex. Funeral Servs. v. Nelson*, 540 S.W.3d 539, 544 (Tex.

---

434 (Tex. 2005) ("Under broad-form submission rules, jurors need not agree on every detail of what occurred so long as they agree on the legally relevant result. Thus, jurors may agree that a defendant failed to follow approved safety practices without deciding each reason that the defendant may have failed to do so.").

2018). The evidentiary standard requires the plaintiff to provide "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." *Id.* "When a plaintiff does not present evidence of the nature, duration, or severity of mental anguish, the reviewing court must determine whether there is 'any evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger to support any award of damages.'" *Hung Tan Phan v. An Ding Le*, 426 S.W.3d 786, 794 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).

## B. Analysis

For each child, the jury awarded $5,000 for "[p]hysical pain and mental anguish sustained in the past." TxDOT contends that none of the children were physically injured in the accident.[8] After a review of the record, we agree that there was no evidence offered to show the minor children were physically injured or suffered physical pain in the past. Clemence testified only to Gover's injuries and the treatment provided to him. Gover testified he held I.G. in his arms during the collision while his remaining three children remained in the truck. When he checked on the three children after the collision, they responded they "felt okay." Gover did not testify as to any physical injuries sustained by his children. Furthermore, C.G. testified that neither he nor any of his siblings had to seek medical treatment. None of the other children testified. We consequently hold that the evidence was legally insufficient to support an award based on past physical pain. *See Burry*, 203 S.W.3d at 549; *Wilson*, 168 S.W.3d at 810 ("Evidence is legally insufficient if

---

[8] Gover's brief does not address this argument and does not point to any evidence showing the children were physically injured.

there is a complete absence of evidence of a vital fact . . . .").

We now look to whether there is legally sufficient evidence to support an award of mental anguish damages.[9] After the impact, Gover testified that his children in the truck were "freaked out." C.G. testified that upon seeing his father, C.G. "was scared" and that his siblings S.G. and J.G. were "freaking out." C.G. further testified that after the accident, the family was impacted because Gover's knee pain prevented him from going out as much. There was no testimony or evidence presented, however, that the claimed mental anguish had any detrimental effect to the children's physical health. Nor did Gover present evidence that the children sought professional treatment or received medication to help cope with their alleged mental anguish.[10] We hold that Gover failed to present "direct evidence of the nature, duration, and severity of [his children's] mental anguish, thus establishing a substantial disruption in the [their] daily routine." *SCI Tex. Funeral Servs.*, 540 S.W.3d at 544. The evidence presented to the jury regarding the minor children's mental anguish was nothing "more than mere worry, anxiety, vexation, embarrassment, or anger to support any award of damages." *See Hung Tan Phan*, 426 S.W.3d at 794; *Med. Protective Co. v. Herrin*, 235 S.W.3d 866, 869 (Tex. App.—Texarkana 2007, pet. denied) (holding a plaintiff's testimony he felt "terrible," "[t]remendously" upset, and "could not get work done" was insufficient to establish a substantial disruption); *Saenz v. Fid. & Guard. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (holding that plaintiffs' worry about losing their home "proved worry, anxiety, vexation[,] and anger, but failed to prove

---

[9] We assume without deciding that "the nature of the duty breached" was of the type to warrant an award of mental anguish damages. *See SCI Tex. Funeral Servs. v. Nelson*, 540 S.W.3d 539, 544 (Tex. 2018).

[10] To the contrary, C.G. testified that neither he nor any of his siblings "sought or actually obtained the services of a therapist, a p[s]yc[h]ologist, or any type of mental health care provider to seek assistance for any problems" associated with the incident.

that their distress involved more than these emotions"); *Woodruff*, 901 S.W.2d at 445 (holding testimony that "I was hot," "I was very disturbed," "it changed our life style," "It's just not pleasant," "It was just upsetting," "I was just upset," and it "caused some friction between us" amounted to mere expressions of "anger, frustration, or vexation").

Viewing the evidence in a light most favorable to the verdict and indulging every reasonable inference to support it, we conclude that the evidence was legally insufficient to support the jury's award of mental anguish damages to the children. *See Wilson*, 168 S.W.3d at 810, 822. We sustain TxDOT's third issue.

## V.    CONCLUSION

We reverse the portion of the trial court's judgment awarding damages to the children but affirm in all other respects.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
30th day of April, 2026.

19